BRADLEY P. UNION, by and through his Guardian, C. DOUGLAS MAXWELL, JR., Plaintiff v. BRANCH BANKING & TRUST COMPANY, Defendant

No. COA05-663

(Filed 21 March 2006)

**1. Trusts— breach of fiduciary duty—negligent management—mental incompetency**

The trial court did not err by granting summary judgment in favor of defendant bank on plaintiff's claims for breach of fiduciary duty and negligent management of the 1977 and 1981 trust accounts, because: (1) when properly requested, no provisions in the 1977 trust agreement afford defendant any discretion on withholding distributions from the 1977 trust to the trust beneficiary's checking account regardless of the beneficiary's alleged mental

incompetency at the time of the request; (2) requests for money from the 1977 trust came from the beneficiary or from someone representing him; and (3) in distributing the funds from the 1977 trust to the beneficiary's account at his request, defendant performed the duties expressly required by the 1977 trust agreement. N.C.G.S. § 32-71(a).

## 2. Banks and Banking— honoring forged checks—failure to meet one-year notice period

The trial court did not err by granting summary judgment in favor of defendant bank on plaintiff guardian's claim that defendant improperly honored forged checks drawn on the pertinent checking account, because: (1) N.C.G.S. § 25-4-406(f) provides that failure of a customer or his representative to report his unauthorized signature within one year after the bank makes account statements available precludes a claim against the bank, even if the customer is incompetent (whether adjudicated or unadjudicated) during the one-year period for providing notice; (2) even if the Court of Appeals accepted the guardian's argument that the requirements of the statute should not be triggered until he was appointed guardian of the estate since the prior guardian was the alleged wrongdoer, the guardian notified the bank of the unauthorized signatures still outside the one-year notification period; (3) a material factual dispute did not exist as to whether the guardian's freezing of the pertinent checking account upon his appointment as interim guardian in December 2000 satisfied the notice requirements; and (4) the guardian's argument that defendant received notice of the unauthorized signatures when defendant's employees attended the pertinent competency hearing where evidence was presented to show that the prior guardian had been forging signatures is without merit.

Appeal by Plaintiff from order entered 28 February 2005 by Judge Gregory A. Weeks in Superior Court, Cumberland County. Heard in the Court of Appeals 24 January 2006.

*Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., Steven C. Lawrence for plaintiff-appellant.*

*McCoy, Weaver, Wiggins, Cleveland, & Raper, PLLC, Jim Wade Goodman for defendant-appellee.*

UNION v. BRANCH BANKING & TR. CO.

[176 N.C. App. 711 (2006)]

WYNN, Judge.

Plaintiff C. Douglas Maxwell, acting in his capacity as guardian of the estate of Bradley P. Union[1] brought this action to recover damages from Defendant Branch Banking and Trust Company ("BB&T") alleging negligent management of Mr. Union's two trust accounts, and wrongful payment on fraudulently endorsed checks drawn on Mr. Union's checking account. Because BB&T is entitled to judgment as a matter of law, we affirm the trial court's order granting summary judgment.

Mr. Union is the beneficiary of two trusts established by his father, respectively the "1977 Trust" and the "1981 Trust". The 1977 Trust funded Mr. Union's personal checking account at BB&T. The 1981 Trust, established as a revocable trust, paid income to Mr. Union's father until his death in 1986; thereafter, it funded the 1977 Trust for the benefit of Mr. Union.

On 17 April 1998, Mr. Union executed a power of attorney to James Johnson, his personal caretaker and assistant since the 1960s, authorizing him to handle his banking transactions. Mr. Johnson testified that his wife, Louise Johnson, assisted in caring for Mr. Union, handled the payroll, and wrote checks to pay Mr. Union's bills. Mrs. Johnson testified that when she wrote the checks, she normally signed the name "Brad Union." Both testified that the checks written in Mr. Union's name were authorized by Mr. Union or Mr. Johnson as attorney-in-fact.

Lou Gentry, Vice President of BB&T's Wealth Management Division and manager of Mr. Union's trust accounts since the 1990s, testified that all of the money paid from the 1977 Trust was made pursuant to a request from Mr. Union or one of his representatives, including Mr. Johnson.

In 2000, Mr. Union's primary care physician became concerned with his healthcare and condition and contacted the Department of Social Services for Adult Protection Services ("DSS"). DSS instituted a competency hearing, and the Clerk of Superior Court, Cumberland County appointed Mr. Maxwell as interim guardian for Mr. Union. In that capacity, Mr. Maxwell revoked the Power of Attorney issued to Mr. Johnson and notified BB&T of his appointment.

---

1. Mr. Union suffers from a mental condition and was adjudicated incompetent by the Clerk of Superior Court, Cumberland County on 27 December 2000. The Clerk appointed Mr. Maxwell guardian of Mr. Union's estate.

On 21 December 2000, Mr. Union was declared incompetent. Mr. Maxwell qualified as guardian of Mr. Union's estate and requested financial records from BB&T. By mid-July 2001, BB&T provided Mr. Maxwell with nearly all of the returned checks requested from Mr. Union's checking account. Upon review of the checks with the assistance of a handwriting expert, Mr. Maxwell alleged that before 1997 and through December 2000, Mr. Johnson and his family members forged Mr. Union's signature on personal checking account checks and improperly converted large sums of money from the checking account.

On 13 October 2003, Mr. Maxwell brought this action against BB&T alleging negligence in its management and handling of the 1977 and 1981 Trust Accounts and payment on fraudulently endorsed checks drawn on Mr. Union's checking account. From the trial court's grant of summary judgment in favor of BB&T, Mr. Maxwell appealed.

[1] Mr. Maxwell first contends the trial court erred in granting BB&T summary judgment[2] on his claims for breach of fiduciary duty and negligent management of the 1977 and 1981 Trust Accounts. He alleges "[t]hat the Defendant breached its contractual obligations under the trusts and N.C. Gen. Stat. § 36A-2(a), by failing to properly manage, administer, retain and protect the trust assets for Brad Union[.]"

Section 32-71(a) of the North Carolina General Statutes provides in pertinent part:

In . . . managing property for the benefit of another, a fiduciary shall observe the standard of judgment and care under the cir-

2. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c)). The moving party bears the burden of showing that no triable issue of fact exists. *Pembee Mfg. Corp. v. Cape-Fear Constr. Co.*, 313 N.C. 488, 329 S.E.2d 350 (1985). This burden can be met by proving: (1) that an essential element of the non-moving party's claim is nonexistent; (2) that discovery indicates the non-moving party cannot produce evidence to support an essential element of his claim; or (3) that the non-moving party cannot surmount an affirmative defense which would bar the claim. *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party has met its burden, the non-moving party must forecast evidence that demonstrates the existence of a *prima facie* case. *Id.* In reviewing the evidence at summary judgment, "all inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988).

cumstances then prevailing, which an ordinarily prudent person of discretion and intelligence, who is a fiduciary of the property of others would observe as such fiduciary; and if the fiduciary has special skills or is named a fiduciary on the basis of representation of special skills or expertise, the fiduciary is under a duty to use those skills.

N.C. Gen. Stat. § 32-71(a) (2005) (recodified from N.C. Gen. Stat. § 36A-2 by S.L. 2005-192, § 1, eff. 1 Jan. 2006).

Mr. Maxwell does not dispute the evidence showing that the requests for money from the 1977 Trust came from Mr. Union, or from someone representing Mr. Union. Instead, he asserts (without citing any authority to support his argument) that in light of Mr. Union's impaired judgment, BB&T had a duty to take measures to protect the 1977 Trust assets and, by continuing to allow the withdrawal of funds from the 1977 Trust to deposit into Mr. Union's checking account, BB&T breached its fiduciary duty under section 32-71(a) to protect the trust assets.

The dispositive portions of the 1977 Trust, which Mr. Maxwell admits is the only trust from which funds were disbursed into Mr. Union's checking account, provide in relevant part:

1. DISPOSITIVE PROVISIONS.

The Trustees shall hold, manage, invest and reinvest the trust property, and shall collect the income thereof and dispose of the net income and principal as follows:

A. The trustees *shall* accumulate the net income of the trust property for the benefit of Trustors' son, Bradley P. Union and, *as long as he shall live, pay to him for his benefit periodically, not less frequently than quarter-annually, so much of the net income of the Trust as the said Bradley P. Union shall request* or, absent such a request, so much of the net income as the trustees in their discretion deem proper and in the best interest of Bradley P. Union.

(Emphasis added).

In *First Nat'l Bank of Catawba Cty. v. Edens*, this Court distinguished between the mandatory and discretionary powers of a trustee, stating:

[a] power is mandatory when it authorizes and commands the trustee to perform some positive act. . . . A power is discretionary

when the trustee may either exercise it or refrain from exercising it, . . . or when the time, manner, or extent of its exercise is left to his discretion.

*First Nat'l Bank of Catawba Cty. v. Edens*, 55 N.C. App. 697, 701, 286 S.E.2d 818, 821 (1982) (internal citation and quotation omitted). "The court will always compel the trustee to exercise a mandatory power." *Woodard v. Mordecai*, 234 N.C. 463, 471, 67 S.E.2d 639, 644 (1951) (citation omitted).

Here, the 1977 Trust Agreement *required* BB&T to distribute funds to Union "so much of the net income of the Trust as the said BRADLEY P. UNION shall request." The record reveals that when BB&T made the distributions, the net income was in the 1977 Trust, and that Mr. Union requested the funds to be deposited from the 1977 Trust into his checking account. When properly requested, no provisions in the 1977 Trust Agreement afford BB&T any discretion on withholding distributions from the 1977 Trust to Mr. Union's checking account, regardless of Mr. Union's alleged mental incompetency at the time of the request. In distributing the funds from the 1977 Trust to Mr. Union's account at his request, BB&T performed the duties expressly required by the 1977 Trust Agreement. Because there is no evidence in the record to support a breach of BB&T's fiduciary duty as it relates to the 1977 or the 1981 Trust, Mr. Maxwell's assignment of error is without merit.

[2] In his final argument on appeal, Mr. Maxwell contends the trial court erred in granting summary judgment on his claim that BB&T improperly honored forged checks drawn on Mr. Union's checking account. Specifically, Mr. Maxwell contends that there is a material factual dispute as to whether Mr. Maxwell complied with the notice requirement for this claim under section 25-4-406(f) of the North Carolina General Statutes. Mr. Maxwell's argument is without merit.

Section 25-4-406(f) provides in pertinent part:

Without regard to care or lack of care of either the customer or the bank, *a customer who does not within one year after the statement or items are made available to the customer* . . . discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

N.C. Gen. Stat. § 25-4-406(f) (2005). As a matter of first impression, to interpret the language of section 25-4-406(f) to determine whether Mr.

Maxwell's claims are precluded, we first look to the plain meaning of the statute. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 388 S.E.2d 134 (1990). Where the language of a statute is clear, the courts must give the statute its plain meaning; however, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent. *Id.* Notwithstanding, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Mazda Motors of Am., Inc. v. Southwestern Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979) (internal quotation and citation omitted).

In this case, we conclude that the language of section 25-4-406(f) is clear: failure of a customer or his representative to report his unauthorized signature within one year after the bank makes account statements available precludes a claim against the bank, even if the customer is incompetent (whether adjudicated or unadjudicated) during the one-year period for providing notice.

Our interpretation of section 25-4-406(f) is consistent with the courts of other jurisdictions interpreting similar statutes. *See Siecinski v. First State Bank of East Detroit*, 531 N.W.2d 768 (Mich. App. 1995) (affirming the trial court's grant of summary judgment to a bank where plaintiff, although incompetent, failed to comply with notice requirement for filing a claim against a bank for honoring unauthorized checks); *Brown v. Cash Management Trust of America*, 963 F. Supp. 504 (D. Md. 1997) (holding that the one-year notice provision for forged checks is "an unalterable condition precedent to suit," against a bank and mental incompetence does not excuse failure to provide notice); *see also Jensen v. Essexbank*, 483 N.E.2d 821 (Mass. 1985) (holding that the one-year notice requirement for filing a claim against a bank for forged checks governed the time within which a party to a contract was obligated to act, and was not a statute of limitations subject to tolling); *Indiana Nat'l Corp. v. Faco, Inc.*, 400 N.E.2d 202 (Ind. Ct. App. 1980) (same).

Here, the undisputed record shows that during the period of 1997-2000, BB&T sent monthly statements and returned checks to Mr. Union's residence. Mr. Johnson, who was Mr. Union's personal assistant and attorney-in-fact, reviewed these statements and never reported an unauthorized check written on Mr. Union's checking account. Mr. Maxwell argues that because Mr. Union was incompe-

tent at the time the fraudulent checks were written, and the power of attorney given to Mr. Johnson, the alleged wrongdoer, was thus invalid, he should be entitled to recover for the wrongfully endorsed checks for one year preceding the 27 December 2000 date he was appointed interim guardian for Mr. Union.

Even if this Court were to accept Mr. Maxwell's argument that the requirements of section 25-4-406(f) should not be triggered until he was appointed guardian of Mr. Union's estate, Mr. Maxwell's claims would still be barred by the statute. The record shows that Mr. Maxwell obtained the allegedly forged checks from BB&T by mid-July 2001. At the earliest, Mr. Maxwell notified BB&T of the unauthorized signatures by letter dated 1 August 2002, which is still outside the one-year notification period required in section 25-4-406. We reject Mr. Maxwell's contention that a material factual dispute exists as to whether Mr. Maxwell's "freezing" Mr. Union's checking account upon his appointment as interim guardian in December 2000 satisfied the notice requirements of section 25-4-406(f). Likewise, Mr. Maxwell's argument that BB&T received notice of the unauthorized signatures when BB&T's employees attended Mr. Union's competency hearing where evidence was presented to show that Mr. Johnson had been forging Mr. Union's signature is without merit.

Because Mr. Maxwell failed to comply with the notice requirements of section 25-4-406(f), Mr. Maxwell is barred from asserting the unauthorized signatures against BB&T. Accordingly, the trial court properly granted BB&T summary judgment on Mr. Maxwell's claim of negligent payment on forged checks drawn on Mr. Union's checking account.

Affirmed.

Judges HUNTER and JACKSON concur.