PRINTING SERVICES OF GREENSBORO, INC., Plaintiff v. AMERICAN CAPITAL GROUP, INC., Defendant

No. COA06-190

(Filed 7 November 2006)

**1. Venue— abuse of discretion standard—mandatory selection clause—exclusivity language required**

The trial court did not abuse its discretion in an action seeking damages for failure to comply with the Loan Broker Act and for breach of contract by denying defendant's motion for change of venue based on a clause in the lease agreement stat-

**PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.**

[180 N.C. App. 70 (2006)]

ing the lease has been performed and entered into in the County of Orangé, State of California, the parties consented to jurisdiction in Orange County, and the parties waived any rights to a trial by jury, because: (1) the general rule is when a jurisdiction is specified in a provision of a contract, the provision generally will not be enforced as a mandatory selection clause without some further language indicating the parties intended to make jurisdiction exclusive; and (2) the pertinent clause contained no language indicating the parties agreed to venue exclusively in California, but merely that a court in Orange County, California would have jurisdiction.

**2. Brokers— loan broker—Loan Broker Act**

The trial court did not err in an action seeking damages for failure to comply with the Loan Broker Act and for breach of contract by determining that the Loan Broker Act is applicable to the instant case, because: (1) a loan broker promised to make or consider making a loan to a corporation, and in fact received consideration in exchange for the loan; (2) defendant is not precluded from being considered a loan broker governed by the Loan Broker Act simply based on the fact that the party for whom the loan is intended is a corporation and not an individual; (3) although the terms of the agreement provide that the lease was performed and entered into in California, not North Carolina, the language of the agreement is permissive rather than mandatory; and (4) N.C.G.S. § 66-112 provides that North Carolina's Loan Broker Act applies in all circumstances in which any party to the contract conducted any contractual activity in this state, and the lease agreement in the pertinent case was signed in North Carolina, and presumably the solicitation, discussion, and negotiation of the agreement occurred in this state.

**3. Broker— loan broker—breach of Loan Broker Act—summary judgment**

The trial court did not err in an action seeking damages for failure to comply with the Loan Broker Act and for breach of contract by granting summary judgment in favor of plaintiff, because: (1) defendant met the definition of a loan broker under N.C.G.S. § 66-106(a)(1) when defendant is a corporation, defendant received consideration in the amount of $1,447.72 from plaintiff as an initial deposit on an agreement that defendant would lease equipment to plaintiff, defendant promised to consider entering into the lease as evidenced by the lease agreement, and the lease

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

constituted a loan; (2) although defendant contends it is an equipment leasing company and does not provide monetary loans or financing to any of its customers, N.C.G.S. § 66-106(a)(2) provides that the definition of a loan includes an agreement to advance property in addition to agreements to advance money; (3) defendant provided no evidence that it had loaned or advanced an aggregate of more than one million dollars in North Carolina in the preceding calendar year, a condition which would exempt it from the Loan Broker Act under N.C.G.S. § 66-106(b); (4) although defendant generally denied plaintiff's allegations of its failure to comply with the Loan Broker Act, it provided no evidence showing that it had, in fact, provided the required disclosures and had a surety bond or trust account as required by N.C.G.S. §§ 66-107 and 66-108; and (5) defendant provided no evidence to dispute the fact that plaintiff paid $1,447.72 to defendant upon signing the lease agreement, plaintiff requested a refund in writing, and defendant failed to refund the full amount to plaintiff.

**4. Damages and Remedies— calculation—failure to comply with loan broker statutes**

The trial court did not err in an action seeking damages for failure to comply with the Loan Broker Act and for breach of contract by its calculation of damages, because: (1) N.C.G.S. § 66-111 provides for the recovery of all fees paid to the broker for the failure to fully comply with the loan broker statutes, subsection (d) provides that such violation constitutes an unfair trade practice under N.C.G.S. § 75-1.1, and N.C.G.S. § 75-16 establishes a private cause of action for any person injured by another's violation of § 75-1.1 and specifically authorizes the award of treble damages; (2) monies received by plaintiff in a settlement cannot be credited prior to trebling the actual award; (3) trebling of the full amount is allowed despite the offer of a partial refund; and (4) there is no evidence showing plaintiff in the instant case has retained any money in settlement of this matter which could serve to offset any money due to plaintiff.

**5. Costs— attorney fees—reasonableness**

Although the trial court did not err in an action seeking damages for failure to comply with the Loan Broker Act and for breach of contract by its award of attorney fees under N.C.G.S. §§ 75-16.1 and 66-106, the findings were insufficient to support the reasonableness of the award because although the

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

order included a statement of the hourly billing rates, it did not include findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney. The case is remanded for entry of findings of fact regarding the award of attorney fees, including attorney fees for this appeal.

Judge GEER concurring in part and dissenting in part.

Appeal by defendant from judgment entered 8 November 2005 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 23 August 2006.

*Robertson, Medlin & Troutman, PLLC, by Stephen E. Robertson, for plaintiff-appellee.*

*The Wescott Law Firm P.C., by Lynanne B. Wescott, for defendant-appellant.*

JACKSON, Judge.

American Capital Group, Inc. ("defendant") appeals from orders of the Guilford County Superior Court denying its motion for change of venue and granting a motion for summary judgment and award brought by Printing Services of Greensboro, Inc. ("plaintiff").

Plaintiff applied for financing with defendant by signing a proposed sixty-month lease agreement on 10 October 2003 and surrendering a deposit of $1,447.72. Said agreement was never signed by defendant and did not contain a description of the equipment to be leased. No equipment was ever delivered to plaintiff. Prior to 19 February 2004, defendant attempted to change the finance term from sixty months to thirty-six months, which was unacceptable to plaintiff. On 19 February 2004, plaintiff requested a full refund due to defendant's inability to "execute an initial proposal to finance a package for [plaintiff] regarding the terms." On 9 April 2004, defendant mailed a check in the amount of $697.72 to plaintiff, which plaintiff refused.

Plaintiff filed suit on 15 November 2004, seeking damages for failure to comply with North Carolina General Statutes, section 66-106 *et. seq.* (the "Loan Broker Act") and for breach of contract. On 3 January 2005, defendant filed a motion for change of venue, claiming the terms of the agreement included a forum selection clause, naming Orange County, California as the proper venue. A hearing on the

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

motion was held on 7 March 2005, and the motion was denied by an order entered 3 May 2005.

Plaintiff filed a motion for summary judgment on 31 August 2005, seeking damages in the amount of $1,447.72, treble damages, and attorney's fees. The motion for summary judgment was heard on 31 October 2005, and in an order entered 8 November 2005, the motion was granted in favor of plaintiff, with damages assessed at $4,343.16 and attorney's fees ordered in the amount of $4,707.76. Defendant filed a notice of appeal on 5 December 2005.

Defendant argues five issues on appeal: 1) the trial court erred in denying defendant's motion for change of venue; 2) the trial court erred in determining that the Loan Broker Act applied to defendant; 3) the trial court erred in granting summary judgment; 4) the trial court erred in its calculation of damages; and 5) the trial court erred in the award of attorney's fees. For the reasons stated below, we affirm in part, and reverse and remand in part.

[1] Defendant first argues the trial court erred in denying its motion for change of venue. With respect to the trial court's decision concerning clauses on venue selection, this Court applies an abuse of discretion standard of review. *Mark Grp. Int'l Inc. v. Still*, 151 N.C. App. 565, 566, 566 S.E.2d 160, 161 (2002). "Under the abuse-of-discretion standard, we review to determine whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Id.*

The clause in question in the instant case reads, "YOU AGREE THAT THIS LEASE HAS BEEN PERFORMED AND ENTERED INTO IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, YOU CONSENT TO JURISDICTION IN ORANGE COUNTY, YOU EXPRESSLY WAIVE ANY RIGHTS TO A TRIAL BY JURY."

> [T]he general rule is when a jurisdiction is specified in a provision of contract, the provision generally will not be enforced as a mandatory selection clause without some further language that indicates the parties' intent to make jurisdiction exclusive. Indeed, mandatory forum selection clauses recognized by our appellate courts have contained words such as "exclusive" or "sole" or "only" which indicate that the contracting parties intended to make jurisdiction exclusive.

*Id.* at 568, 566 S.E.2d at 162 (internal citations omitted). The clause in question contains no such language indicating the parties agreed

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

to venue exclusively in California, merely that a court in Orange County, California would have jurisdiction. Therefore, the trial court did not abuse its discretion in denying defendant's motion for change of venue.

[2] Defendant next contends the trial court erred in determining that the Loan Broker Act is applicable in the instant case. Specifically, defendant argues that: 1) defendant is not a "loan broker;" 2) plaintiff is not a "person;" and 3) the actions attendant upon the agreement were not conducted in North Carolina. As defendant's first and second arguments are intertwined, we address them together.

"Questions of statutory interpretation are questions of law, which are reviewed *de novo* by an appellate court." *In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 559, 589 S.E.2d 179, 180 (2003). "The cardinal principle of statutory interpretation is to ensure that legislative intent is accomplished." *McLeod v. Nationwide Mutual Ins. Co.*, 115 N.C. App. 283, 288, 444 S.E.2d 487, 490 (1994). "To determine legislative intent, we first look to the language of the statute." *Estate of Wells v. Toms*, 129 N.C. App. 413, 415-16, 500 S.E.2d 105, 107 (1998) (citing *Poole v. Miller*, 342 N.C. 349, 351, 464 S.E.2d 409, 410 (1995)).

North Carolina General Statutes, section 66-106 provides:

A "loan broker" is any person, firm, or corporation who, in return for any consideration from any person, promises to (i) procure for such person, or assist such person in procuring, a loan from any third party; or (ii) consider whether or not it will make a loan to such person.

N.C. Gen. Stat. § 66-106(a)(1) (2003). Subsection (b) of section 66-106 designates certain groups of lenders as being exempt from the Loan Broker Act, and concludes with, "subdivision (1)(ii) above shall not apply to any lender whose loans or advances to any person, firm or corporation in North Carolina aggregate more than one million dollars ($1,000,000) in the preceding calendar year." N.C. Gen. Stat. § 66-106(b) (2003).

We are guided in our review by several principles of statutory construction.

[T]he judiciary must give "clear and unambiguous" language its "plain and definite meaning." However, strict literalism will not be applied to the point of producing "absurd results." When the

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

plain language of a statute proves unrevealing, a court may look to other indicia of legislative will, including: "the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia*, the preamble, the title, and other like means." The intent of the General Assembly may also be gleaned from legislative history. Likewise, "later statutory amendments provide useful evidence of the legislative intent guiding the prior version of the statute." Statutory provisions must be read in context: "Parts of the same statute dealing with the same subject matter must be considered and interpreted as a whole." "Statutes dealing with the same subject matter must be construed *in pari materia*, as together constituting one law, and harmonized to give effect to each."

*Proposed Assessments*, 161 N.C. App. at 560, 589 S.E.2d at 181 (internal citations omitted).

It is noteworthy that the resource used by many in North Carolina's legal community includes no reference to whom a loan is made or contemplated in its recitation of the definition of a loan broker. "For purposes of N.C. Gen. Stat. Chapter 66, Article 20, a 'loan broker' is any person, firm, or corporation who, with certain exceptions, in return for any consideration, promises to procure or assist in procuring a third party loan, or considers whether or not it will make the loan." 4 Strong's North Carolina Index 4th *Brokers and Factors* § 20 (2001). There is little case law interpreting the term "loan broker," however, we find the recent case of *Johnson v. Wornom*, 167 N.C. App. 789, 606 S.E.2d 372, *disc. review denied*, 359 N.C. 411, 612 S.E.2d 321 (2005), to be instructive.

In *Johnson*, Mr. Wornom, an alleged "loan broker," agreed to guarantee a Capital Bank loan of $82,000.00 to Dexter Sports Supplements, Inc. and Powerstar, Inc., both North Carolina "corporations." *Id.* at 790, 606 S.E.2d at 373. As consideration, Wornom was granted, *inter alia*, management rights in the two businesses. *Id.* Charles Johnson ("Johnson"), the founder of Dexter Sports Supplements, Inc. and Powerstar, Inc., brought suit against Wornam, alleging that Wornom failed to fulfill his obligations as a loan broker, pursuant to North Carolina General Statutes, section 66-107 *et seq. Id.* As noted by the dissent, Johnson brought this suit in his individual capacity; however, he also brought the suit in his capacity as a share-

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

holder of the two corporations. Moreover, Johnson had sought the initial loan on behalf of the two corporations, and Wornom in turn guaranteed the loan on behalf of the corporations. *Id.* The trial court granted Wornom's motion for summary judgment, finding that Wornom had not acted as a loan broker and dismissed Johnson's loan broker claim with prejudice. *Id.* at 790, 606 S.E.2d at 373-74. This Court reversed the lower court's grant of summary judgment in Wornom's favor, based on Wornom's promise to, and subsequent procurement of a loan from a third party in return for consideration. *Id.* at 792, 606 S.E.2d at 374-75. As in *Johnson*, the alleged "loan broker" in the instant case received consideration from a "corporation," not a "person." We hold that *Johnson* is controlling, in that in both *Johnson* and the instant case, a "loan broker" promised to make or consider making a loan to a corporation, and in fact received consideration in exchange for the loan. "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (citations omitted). Thus, as a matter of law, we hold defendant is not precluded from being considered a "loan broker" governed by the Loan Broker Act simply because the party for whom the loan is intended is a corporation and not an individual.

Defendant also contends the provisions of North Carolina General Statutes, section 66-112 of the Loan Broker Act preclude recovery in this case because according to the terms of the agreement, the lease was performed and entered into in California, not North Carolina. In accordance with our reasoning regarding forum selection *supra*, we find the language of the agreement to be permissive rather than mandatory. In addition, section 66-112 provides that North Carolina's Loan Broker Act applies "in all circumstances in which any party to the contract conducted any contractual activity (including but not limited to solicitation, discussion, negotiation, offer, acceptance, signing, or performance) in this State." N.C. Gen. Stat. § 66-112 (2003). Thus, as the lease agreement was signed in North Carolina, and presumably the solicitation, discussion, and negotiation of the agreement occurred in this state, then North Carolina's Loan Broker Act is applicable in the instant case.

[3] In its next argument, defendant questions whether the trial court erred in granting summary judgment in plaintiff's favor. " 'We review the trial court's grant of summary judgment *de novo*.' " *Johnson*, 167

78 IN THE COURT OF APPEALS

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

N.C. App. at 791, 606 S.E.2d at 374 (quoting *White v. Consolidated Planning, Inc.,* 166 N.C. App. 283, 296, 603 S.E.2d 147, 157 (2004)).

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." "A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." "If the moving party satisfies its burden of proof, then the burden shifts to the non-moving party to 'set forth specific facts showing that there is a genuine issue for trial,'" or, alternatively, must produce an excuse for not doing so. "The nonmoving party 'may not rest upon the mere allegations of his pleadings.'" Thus where, "the moving party by affidavit or otherwise presents materials in support of his motion, it becomes incumbent upon the opposing party to take affirmative steps to defend his position by proof of his own. If he rests upon the mere allegations or denial of his pleading, he does so at the risk of having judgment entered against him."

*Wall v. Fry,* 162 N.C. App. 73, 76-77, 590 S.E.2d 283, 285 (2004) (internal citations omitted). The material facts of this case involve: 1) whether defendant was a loan broker; 2) if so, whether defendant failed to fully comply with the Loan Broker Act; and 3) if so, whether defendant failed to fully refund plaintiff's advanced funds.

A "loan broker" includes 1) any corporation who, 2) in return for any consideration, 3) promises to consider whether or not it will make 4) a loan. *See* N.C. Gen. Stat. § 66-106(a)(1) (2003). It is undisputed that defendant is a corporation, as defendant admitted in its answer. It also is undisputed that defendant received consideration in the amount of $1,447.72 from plaintiff. This money was received by defendant as an initial deposit on the agreement that defendant would lease equipment to plaintiff. Further, defendant promised to consider entering into the lease, as evidenced by the lease agreement which stated "THIS LEASE IS SUBJECT TO APPROVAL AND ACCEPTANCE BY US." Finally, the "lease" constituted a "loan" as defined by the Loan Broker Act, in that "[a] 'loan' is an agreement to advance money *or property* in return for the promise to make payments therefor, whether such agreement is styled as a loan, credit card, line of

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

credit, a lease or otherwise." N.C. Gen. Stat. § 66-106(a)(2) (2003) (emphasis added). During oral argument, defendant argued that it is an equipment leasing company, and does not provide monetary loans or financing to any of its customers. However, pursuant to section 66-106(a)(2), the definition of a "loan" includes an agreement to advance property, in addition to agreements to advance money. Further, defendant provided no evidence that it had loaned or advanced an aggregate of more than one million dollars in North Carolina in the preceding calendar year, a condition which would exempt it from the Loan Broker Act pursuant to section 66-106(b). Therefore, there is no genuine issue of material fact as to defendant's status as a loan broker subject to the provisions of the Loan Broker Act.

The Loan Broker Act requires loan brokers to provide a disclosure statement and surety bond or trust account. *See* N.C. Gen. Stat. §§ 66-107 and -108 (2003). Although in its answer, defendant generally denied plaintiff's allegations of its failure to comply with the Loan Broker Act, it provided no evidence showing that it had, in fact, provided the required disclosures and had a surety bond or trust account. Therefore, there is no genuine issue of material fact as to defendant's failure to comply fully with the Loan Broker Act.

The Loan Broker Act entitles the borrower to receive a refund of all sums paid to the broker upon written notice. Defendant further provided no evidence in dispute of the fact that plaintiff paid $1,447.72 to defendant upon signing the lease agreement and that plaintiff requested a refund in writing. Defendant provided no evidence to dispute the fact that it failed to refund the full $1,447.72 to plaintiff. In fact, in support of its contention that the calculation of damages was erroneous, defendant argued the fact that it had proffered a partial refund. Therefore, there is no genuine issue of material fact as to defendant's failure to fully refund plaintiff's advanced funds.

As there were no genuine issues of material fact in dispute, we hold the trial court did not err in granting summary judgment in plaintiff's favor.

[4] In its fourth argument, defendant contends that the trial court erred in its calculation of damages. North Carolina General Statutes, section 66-111 provides for the recovery of all fees paid to the broker for the failure to fully comply with the loan broker statutes. N.C. Gen. Stat. § 66-111(a) (2003). Subsection (d) states that such violation constitutes an unfair practice under section 75-1.1. N.C. Gen.

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

Stat. § 66-111(d) (2003). Section 75-16, which establishes a private cause of action for any person injured by another's violation of section 75-1.1, specifically authorizes the award of treble damages. *See* N.C. Gen. Stat. § 75-16 (2003). "[D]amages assessed pursuant to [N.C. Gen. Stat. §] 75-1.1 are trebled automatically." *Pinehurst Inc. v. O'Leary Bros. Realty*, 79 N.C. App. 51, 61, 338 S.E.2d 918, 924 (1986).

Defendant argues that the proffered $697.72 refund should have been credited prior to trebling. However, in *Seafare Corp. v. Trenor Corp.*, 88 N.C. App. 404, 416, 363 S.E.2d 643, 652 (1988), this Court held that it was error to credit monies received by plaintiff in settlement prior to trebling the actual award. In addition, in its answer to the complaint, defendant denied the allegation in plaintiff's complaint which alleged that defendant had mailed a check for $697.72 to plaintiff as a partial refund. Defendant cannot deny the check existed, and then argue the check was proffered and should be credited to it.

Defendant further argues that credit should have been given for payments proffered even if they were refused. However, in *Washburn v. Vandiver*, 93 N.C. App. 657, 379 S.E.2d 65 (1989), the holding of *Seafare Corp.* was applied where the purchasers of a truck refused a refund that was less than all sums paid for the truck. In that case, the purchasers had not yet paid for the truck in full. Defendant successfully brought a counterclaim for the unpaid balance. This Court upheld the trial court's trebling of the full award to plaintiffs, despite the offer of partial refund, followed by an offset for the money remaining due to defendant. *Id.* at 664, 379 S.E.2d at 69-70. There is no evidence showing that plaintiff in the instant case has retained any money in settlement of this matter which could serve to offset any money due to plaintiff. Therefore, we hold the trial court did not err in calculating plaintiff's damages, and defendant's assignment of error is overruled.

**[5]** Finally, defendant argues the trial court erred in the award of attorney's fees. Attorney's fees are authorized in this case pursuant to two statutes: section 75-16.1 of the Unfair Trade Practices Act and section 66-111 of the Loan Broker Act. Under section 75-16.1, the presiding trial judge has the discretion to allow a reasonable attorney fee upon finding that the party charged with violating the unfair trade practices statutes acted willfully and unwarrantedly refused to fully resolve the matter. N.C. Gen. Stat. § 75-16.1(1) (2003). Under section 66-111, the prospective borrower "shall be entitled to . . . recover any additional damages including attorney's fees," if the loan broker

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

fails to fully comply with statutory requirements. N.C. Gen. Stat. § 66-111(a) (2003).

> The decision whether or not to award attorney fees under section 75-16.1 rests within the sole discretion of the trial judge. And if fees are awarded, the amount also rests within the discretion of the trial court and we review such awards for abuse of discretion. However, when awarding fees pursuant to N.C. Gen. Stat. § 75-16.1, the court must make specific findings of fact that the actions of the party charged with violating Chapter 75 were willful, that it refused to resolve the matter fully, and that the attorney fee was reasonable. . . . On appeal, the record must also contain findings regarding the attorney fees, such as: "findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney."

*Blankenship v. Town & Country Ford, Inc.*, 174 N.C. App. 764, 771, 622 S.E.2d 638, 643 (2005) (citation omitted). The trial court in the instant case found the following as fact: defendant willfully collected an advance fee in violation of section 66-108(c); defendant refused to fully resolve the matter; and the attorney's fees were reasonable.

It is well-settled that a trial court's findings of fact are binding upon appeal if they are supported by competent evidence, even when there may be evidence to the contrary. *See Mason v. Town of Fletcher*, 149 N.C. App. 636, 639, 561 S.E.2d 524, 526 (2002). As there was no record of the summary judgment hearing, we have little to guide us in determining if the findings made were supported by competent evidence. However, it is clear that in October 2003, defendant accepted $1,447.72 from plaintiff in advance of its acceptance of the lease agreement. Six months later, an agreement had not yet been reached. We hold this to be evidence that defendant acted willfully, and not by accident or mistake.

Although there is some evidence that defendant attempted to resolve the matter, any attempt was only in partial satisfaction of defendant's obligations under the Loan Broker Act. Defendant argues that in addition to the proffered $697.72, an offer to settle was made on 19 July 2004 as evidenced by an entry in plaintiff's affidavit for attorney's fees which reads, "Receive offer from PSG and advise client." Defendant contends that *presumably* the attorney meant "ACG" rather than "PSG" because PSG could not make itself an offer. However, nowhere in the affidavit does the attorney refer to defend-

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

ant as "ACG." Rather, twice he refers to defendant as "American Capital." Further, defendant offers no proof that such an offer was made on that date in an amount of full satisfaction. Plaintiff's affidavit reflects that in March 2005, plaintiff's attorney was engaged in drafting a settlement letter to opposing counsel. This letter may have been based on plaintiff's offer conveyed to its attorney on 19 July 2004. There is competent evidence from which the trial court could find that defendant had failed to fully resolve the matter. The fact that resolution could have been had for less than $1,447.72 is evidence from which the trial court could find that such refusal to fully resolve the matter was unwarranted.

Although the order included a statement of the hourly billing rates, it did not include "findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney." *See Blankenship,* 174 N.C. App. at 771, 622 S.E.2d at 643. Without these findings, we are unable to determine the reasonableness of the trial court's award.

Having determined that defendant failed to fully comply with the Loan Broker Act, the trial court was obligated pursuant to North Carolina General Statutes, section 66-111 to assess attorney's fees against defendant. We hold the trial court did not err in awarding plaintiff attorney's fees in this case, as they were authorized by both sections 75-16.1 and 66-106. However, there are insufficient findings to support the reasonableness of the award. We note that when attorney's fees are authorized under section 75-16.1, such fees include those for appeal. *See United Laboratories, Inc. v. Kuykendall,* 102 N.C. App. 484, 495, 403 S.E.2d 104, 111 (1991), *aff'd,* 335 N.C. 183, 437 S.E.2d 374 (1993); *Cotton v. Stanley,* 94 N.C. App. 367, 370, 380 S.E.2d 419, 422 (1989).

We hold there is no error at the trial court level, with the exception of the reasonableness of the attorney's fees. We therefore remand this cause for entry of findings of fact regarding the award of attorney's fees, including attorney's fees for this appeal.

Affirmed in part; Reversed and remanded in part.

Judge CALABRIA concurs.

Judge GEER concurs in part and dissents in part by separate opinion.

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

GEER, Judge, concurring in part and dissenting in part.

I concur with the majority's holding regarding the motion for change of venue. Because, however, I believe the Loan Broker Act, N.C. Gen. Stat. §§ 66-106 through -117 (2005), only operates to protect natural persons, I would reverse the judgment of the trial court awarding the corporate plaintiff summary judgment. Accordingly, I respectfully dissent from the remaining portions of the majority opinion.

The critical question on appeal is whether defendant is a "loan broker" within the meaning of the Loan Broker Act. That Act defines loan broker as follows:

A "loan broker" is any *person, firm, or corporation* who, in return for any consideration from *any person*, promises to (i) procure for *such person*, or assist *such person* in procuring, a loan from any third party; or (ii) consider whether or not it will make a loan to *such person.*

N.C. Gen. Stat. § 66-106(a)(1) (2005) (emphases added). The majority construes the word "person" in this definition to include corporations. I do not believe that this view is consistent with principles of statutory construction.

"In matters of statutory construction the task of the Court is to determine the legislative intent, and the intent is ascertained in the first instance 'from the plain words of the statute.'" *N.C. Sch. Bds. Ass'n v. Moore*, 359 N.C. 474, 488, 614 S.E.2d 504, 512 (2005) (quoting *Elec. Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991)). It is well established that "where a statute is intelligible without any additional words, no additional words may be supplied." *State v. Camp*, 286 N.C. 148, 151, 209 S.E.2d 754, 756 (1974). Absent a showing that giving effect to the literal wording of a statute would produce absurd results or contravene the manifest purpose of the legislature, we may not disregard a statute's plain language. *Union v. Branch Banking & Tr. Co.*, 176 N.C. App. 711, 716-17, 627 S.E.2d 276, 279 (2006).

I recognize that N.C. Gen. Stat. § 12-3(6) (2005) provides, with respect to statutes, that "[t]he word 'person' shall extend and be applied to bodies politic and corporate, as well as to individuals, unless the context clearly shows to the contrary." Here, I believe that the context clearly shows to the contrary. The definition of "loan broker" includes "any person, firm, or corporation" who engages in cer-

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

tain conduct with respect to "any person." If the General Assembly had intended that the Loan Broker Act apply with respect to loans to corporations, it surely would have said so. It defined the entity engaging in the loan brokerage activity as encompassing persons, firms, or corporations, but, eight words later, chose not to reference firms or corporations when discussing potential borrowers.

To construe the statute, as the majority does, so as to encompass firms and corporations within the phrase "any person" would lead to curious results. After substituting the majority's broader definition of "person," the definition of "loan broker" would then read: "A 'loan broker' is any *person, [firm, or corporation], firm, or corporation* who, in return for any consideration from any person, [firm, or corporation], promises to (i) procure for such person, [firm, or corporation,] or assist such person[, firm, or corporation] in procuring, a loan from any third party; or (ii) consider whether or not it will make a loan to such person[, firm, or corporation]." Because the statute's language is plain and not ambiguous, I do not believe that we need—or are permitted—to add additional words to the statute, especially when the result is such an odd redundancy.

The majority cites *Johnson v. Wornom,* 167 N.C. App. 789, 606 S.E.2d 372, *disc. review denied,* 359 N.C. 411, 612 S.E.2d 321 (2005), as supporting its conclusion that a corporation may seek relief under the Loan Broker Act. I respectfully believe the majority has misread *Johnson. Johnson* involved loan procurement services to an individual and not a corporation. As the caption and text of *Johnson* indicates, the action under N.C. Gen. Stat. § 66-107 (2005) was brought by an individual, Charles Dexter Johnson, and not by a corporation. *Id.* at 790-91, 606 S.E.2d at 373-74 (reciting that "Johnson filed an action" under the Loan Broker Act and that the trial court dismissed "Johnson's loan broker claim," a decision that "Johnson appealed").[1] Further, in the recitation of the facts, the opinion states that "Johnson defaulted on [the] loan" procured by the defendant, who was alleged to be a loan broker.

In short, as the opinion indicates, *Johnson* involved services being rendered to an individual (even if for the benefit of a corporation), and a claim being filed by an individual and not by a corporation. The result in *Johnson*—which did not, in any event, address the issue in this case—is entirely consistent with my con-

---

1. Indeed, according to the caption of the opinion, the corporations cited by the majority—and for the benefit of whom Johnson apparently individually obtained the loan—were, in fact, co-defendants with the alleged loan broker.

PRINTING SERVS. OF GREENSBORO, INC. v. AMERICAN CAPITAL GRP., INC.

[180 N.C. App. 70 (2006)]

struction of the Loan Broker Act. Here, in contrast to *Johnson*, services were rendered solely to a corporation, and the claim was filed by a corporation.

The majority also looks to N.C. Gen. Stat. § 66-106(b), which provides that N.C. Gen. Stat. § 66-106(a)(1)(ii) of the Loan Broker Act "shall not apply to any lender whose loans or advances *to any person, firm or corporation* in North Carolina aggregate more than one million dollars ($1,000,000) in the preceding calendar year" regardless whether the lending entity would otherwise fall within the definition of a loan broker under N.C. Gen. Stat. § 66-106(a)(1). (Emphasis added.) Plaintiff argues on appeal, and the majority apparently agrees, that under the principle of *in pari materia*, this provision necessarily indicates that lendees under the Loan Broker Act may also be "firm[s]" or "corporation[s]." *See, e.g., Rhyne v. K-Mart Corp.*, 358 N.C. 160, 188, 594 S.E.2d 1, 20 (2004) ("[W]e construe statutes *in pari materia*, giving effect, if possible, to every provision.").

I believe, to the contrary, that this provision further supports my view that the plain language of the Loan Broker Act only allows claims by natural persons and not by borrowers who are firms or corporations. First, the fact that the General Assembly referred to "any person, firm, or corporation" in both N.C. Gen. Stat. § 66-106(a)(1) and in N.C. Gen. Stat. § 66-106(b) while elsewhere referring only to "any person" strongly suggests that the omission of "firm" and "corporation" in other portions of the statute was intentional. *See Univ. of N.C. at Chapel Hill v. Feinstein*, 161 N.C. App. 700, 704, 590 S.E.2d 401, 403 (2003) ("A statute that provides a clear enumeration of its inclusion is read to exclude what the General Assembly did not enumerate."), *disc. review denied*, 358 N.C. 380, 598 S.E.2d 380 (2004).

Second, I read N.C. Gen. Stat. § 66-106(b) as excepting in part from the Loan Broker Act's coverage large lenders: those whose loans in North Carolina to *any* party (*i.e.*, "person, firm or corporation") exceed $1,000,000.00 are exempt from N.C. Gen. Stat. § 66-106(a)(1)(ii). In other words, even if a transaction would otherwise come within the scope of the Loan Broker Act (*e.g.*, an individual person seeking loan services from a corporate lender), the lender would not be a "loan broker" so long as *all* of the lender's loans to North Carolina borrowers aggregated to more than $1,000,000.00, regardless whether those loans were made to a "person, firm or corporation." Thus, under N.C. Gen. Stat. § 66-106(b), large lenders are

not "loan broker[s]" if the only act they take, in return for consideration from any person, is to promise to "consider whether or not [they] will make a loan to [any] person." N.C. Gen. Stat. § 66-106(a)(1)(ii). This limited exception for large lenders makes sense and does not, to me, suggest an expansion of the coverage of the Loan Broker Act to corporate borrowers.

In short, based on the language of the statute itself, I would hold that corporations—as opposed to individual borrowers—may not assert claims under the Loan Broker Act. *See N.C. Ass'n of Elec. Tax Filers, Inc. v. Graham*, 333 N.C. 555, 567, 429 S.E.2d 544, 551 (observing that the Loan Broker Act was enacted "for consumer protection purposes"), *cert. denied*, 510 U.S. 946, 126 L. Ed. 2d 336, 114 S. Ct. 388 (1993); *Black's Law Dictionary* 206 (8th ed. 2004) (defining "loan broker" as "[a] person who is in the business of lending money, *usu. to an individual*, and taking as security an assignment of wages or a security interest in the debtor's personal property" (emphasis added)). I would, therefore, reverse the trial court's decision and remand for consideration of plaintiff's breach of contract claim.