656 S.E.2d 626 (2008)
In the Matter of T.R.M.
No. COA07-1170.
Court of Appeals of North Carolina.
February 19, 2008.
Lynne G. Schiftan, Greensboro, for petitioner-appellee Guilford County Department of Social Services.
Margaret Rowlett, Greensboro, for guardian ad litem.
Christy E. Wilhelm, Concord, for respondent-appellant.
JACKSON, Judge.
Ericka M. ("respondent"), mother of the juvenile T.R.M., appeals from the trial court's order entered 11 July 2007 granting guardianship of T.R.M. to T.R.M.'s maternal grandparents. For the reasons stated herein, we affirm.
In early. August 2006, the Guilford County Department of Social Services ("DSS") became involved with the family based upon allegations that respondent could not provide proper care and supervision of the minor child. Specifically, DSS alleged that respondent was unable to maintain stable housing or obtain employment, and she was unable to feed T.R.M. on a regular basis. DSS also alleged that respondent suffered from mental health pr5blems and needed a psychological *628 evaluation. Respondent was arrested on 15 August 2006 pursuant to outstanding warrants, and T.R.M. was placed with the maternal grandmother. DSS was granted nonsecure custody pursuant to a juvenile petition in which DSS alleged T.R.M. to be neglected and dependent.
On 9 October 2006, the trial mint entered an order adjudicating T.R.M. dependent, but dismissing the allegation of neglect. Respondent was ordered to comply with a family service agreement and a case plan, and to submit to random drug screenings. The trial court also granted respondent supervised visitation.
By order entered 12 January 2007, the trial court noted that pursuant to respondent's case plan with DSS, she had agreed to maintain stable housing, find employment, and participate in a psychological evaluation. The court found that respondent (1) had obtained part-time employment, but had been unable to find suitable housing; (2) failed to appear for her scheduled psychological evaluation on 14 December 2006; and (3) attended eight out of twelve visitations with T.R.M., but was tardy for some of them. The trial court ordered respondent to comply with her case plan, continue visiting T.R.M., and attend a newly scheduled psychological evaluation appointment.
By order entered 13 April 2007, the trial court found that although respondent was complying with her visitation plan with T.R.M., she no longer was employed and still did not have stable housing. The court also found that respondent was "not willing to work in any capacity, other than (sic) a professional capacity. Therefore there are certain jobs she refuses to apply for." The court further found that respondent refused to consider certain housing options suggested by the social worker. The trial court ordered DSS to continue to make reasonable efforts to return T.R.M. to the home, and ordered respondent to comply with her case plan. The trial court also granted DSS the authority to allow respondent unsupervised visitation with the child.
In its permanency planning review order entered 11 July 2007, the trial court found that respondent had completed her psychological evaluation. The recommendation given as a result of the evaluation was that respondent should be required to attend individual counseling. The trial court found as fact that respondent (1) was unwilling to participate in counseling; (2) failed to obtain a second opinion regarding counseling even though she previously had stated her intention to do so; (3) repeatedly violated certain parameters for her visitation and communication with T.R.M.; (4) was unwilling to accept employment offered to her; and (5) was having trouble being accepted for housing by one agency because of her previous statement that she did not intend to comply with their program. The trial court found it unlikely that T.R.M. would be returned to the home within the next six months due to respondent's lack of progress with her case plan, and granted guardianship of T.R.M. to the maternal grandparents. Thereafter, respondent filed timely notice of appeal.
On appeal, respondent first contends that the trial court failed to make sufficient findings of fact pursuant to North Carolina General Statutes, section 7B-907. Specifically, she contends the trial court erred because (1) the court failed to find that it would not be possible to return the juvenile to the home; (2) no explanation was offered regarding the effect of guardianship as a permanent plan, nor did the trial court address the rights and responsibilities accorded to respondent; (3) the court failed to give a reason as required by statute for ceasing to hold further review hearings; and (4) no facts exist to support the conclusion that T.R.M. continues to be a dependent juvenile. We disagree.
Permanency planning hearings are held for the purpose of "develop[ing] a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen.Stat. § 7B-907(a) (2007). If the trial court decides to allow DSS to cease reunification efforts with the parent, and the juvenile is not returned home, then
the court shall consider the following criteria and make written findings regarding those that are relevant:
(1) Whether it is possible for the juvenile to be returned home immediately or *629 within the next six months, and if not, why it is not in the juvenile's best interests to return home;
(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;
(3) Where, the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;
(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;
(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile.
(6) Any other criteria the court deems necessary.
N.C. Gen.Stat. § 7B-907(b) (2007).
In the instant case, the trial court made the following findings of facts:
4. The juvenile was placed in the home of her maternal grandmother and her husband. . . . It is reported that this juvenile has been residing in this home for the majority of her life, with the exception of a year-and-a-half. This is a stable environment for this juvenile and all of her needs have been met.
. . . .
6. [Respondent] entered into a case plan with [DSS] wherein she agreed:
[a.] To maintain a bond with her child through visitation and telephone contact. . . . She was requested to refrain from visit[ing] the child unexpectedly or outside the visitation schedule. [Respondent] has continued to be in noncompliance with respect to these components, in that she has come by unexpectedly and has called repeatedly after 9:30 p.m.
[d.] [To] participate in a psychological evaluation; that evaluation has been completed. Dr. Michael McCollum submitted a report after testing [respondent]. The report indicates that she suffers from paranoia, narcissism, cornpulsivity[,] and sadistic characteristics [The doctor's] recommendation. . . . is that she be required to attend individual counseling. . . . [Respondent] indicated to the social worker that she does not need counseling [and] that she was going to get a second opinion. [Respondent] has failed to get a second opinion, []or indicate to the Court that she has made arrangements to obtain a second opinion. [Respondent] has also failed to indicate to the Court that she is willing to participate in counseling.
7. [Respondent] has shown by her behavior, and her statements, that she is unwilling to submit to counseling and anything else she does not want to do. She has been offered employment, on at least two different occasions, and she rejected each opportunity, and for at least one of those jobs, she indicated that that is not the type of employment she was seeking.
8. [DSS] has made reasonable efforts towards reunification in that they have made referrals to or provided services for [inter affix, assistance toward obtaining employment, housing, day care, financial assistance, and mental health treatment.]
. . . .
10. It is improbable that the child will return to the home within the next six months due to [re'spondent]'s lack of progress on her case plan and the choices that she continues to make that impedes (sic) her progress on the case plan.
11. Adoption should not be pursued in that the maternal grandparents have indicated that they wish for the Court to grant guardianship as oppose[d] to adoption. The child should remain in the current placement. It is in this juvenile's best interest for the Court to grant guardian" ship to the grandparents to provide stability and finality.
Respondent has failed to assign error to these, or any other, findings of fact made by *630 the trial court, and therefore, the findings are deemed supported by competent evidence and are binding upon this Court. See Koufman v. Kaufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
Based upon its findings of fact, the trial court concluded:
1. That it is in the best interest of [T.R.M.] to be placed under the guardianship with the maternal grandparents, . . . in that this child has been in non-secure custody since August 2006, and the mother's minimum progress on her case plan and refusal to comply with many of the components of her case plan.
2. Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months.
The trial court then ordered T.R.M. placed in the guardianship of the maternal grandparents, with visitation rights granted to respondent, and respondent was ordered to comply with certain communication and visitation restrictions.
Respondent first contends that the trial court failed to make the required finding pursuant to 7B-907(b)(1). Specifically, although the trial court found that T.R.M.'s return to the home was improbable, respondent attempts to argue a distinction between the trial court's use of the word "improbable" and the statutory requirement that a court find whether return of the child is "possible" pursuant to section 7B-907(b)(1).
"While it is better practice to use the words of the statute," State v. Boone, 293 N.C. 702, 711, 239 S.E.2d 459, 464 (1977), we decline to hold that the trial court's use of language of probability-as opposed to language of possibility-requires remand. This Court previously has not required such a strict interpretation of section 7B-907(b)(1).[1] In fact, we have not required trial courts to specifically identify the factors set forth in section 7B-907(b), provided that the record demonstrates that the factors were taken into account. See In re 164 N.C.App. 96, 106, 595 S.E.2d 155, 161 (2004) ("Here, by changing the permanent plan for J.C.S. and R.D.S. to adoption, the trial court necessarily determined it was not in the children's best interests to return home within the next six months, pursuant to [section] 7B-907(b)(1)."), overruled on other grounds by In re R.T.W., 359 N.C. 539, 542-43, 614 S.E.2d 489, 491 (2005), supereeded by statute as stated in In re A.B., 179 N.C.App. 605, 608 n. 2, 635 S.E.2d 11, 14 (2006). Furthermore, as Judge Posner once remarked, "[a]nything is possible; there are no metaphysical certainties accessible to human reason. . . ." United States v. Ytem, 255 F.3d 394, 397 (7th Cir. 2001) (emphasis in original).[2] As such, it is patently unrealistic to expect trial courts to determine whether an event is or is not *631 possible, and "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." Union v. Branch Banking & Trust Co., 176 N.C.App. 711, 717, 627 S.E.2d 276, 279 (2006) (quoting Mazda Motors of Am., Inc. v. Sw. Motors, Inc., 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979)). The trial court's finding of fact sufficiently addresses the criteria listed in subsection (b)(1), and accordingly, this argument is overruled.
Respondent also argues that the trial court failed to explain respondent's rights and responsibilities pursuant to subsection (b)(2). However, contrary to respondent's contention, the trial court addressed respondent's rights and responsibilities by providing her visitation rights and clear guidance as to the limitations upon those visitation rights. Respondent does not specifically challenge the remaining criteria in section 7B-907, and we hold that the findings of fact adequately address each of the criteria. Therefore, respondent's argument is overruled.
Respondent further contends that the trial court misled her by stating she could motion the court to modify the custody arrangement if her circumstances improved, because the standard for changing guardianship pursuant to section 7B-600 carries a heavier burden. This argument is not properly before this Court because respondent's corresponding assignment of error is limited to whether "the trial court erred in failing to make the required findings of fact pursuant to N.C. Gen.Stat. § 7B-907." According to the North Carolina Rules of Appellate Procedure, "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal." N.C. R.App. P. 10(a) (2007). "Each assignment of error . . . shall state plainly, concisely and without argumentation the legal basis upon which error is assigned." N.C. R.App. P. 10(c)(1) (2007). Since the argument regarding the standard for changing guardianship is outside the scope of respondent's first assignment of error, we decline to address it.
Respondent next argues that the trial court failed to make the necessary findings of "act to discontinue its obligation to hold further review hearings. Section 7B-907(c) provides that "[i]f at any time custody is restored to a parent, or findings are made in accordance with [section] 7B-906(b), the court shall be relieved of the duty to conduct periodic judicial reviews of the placement." N.C. Gen.Stat. § 7B-907(c) (2007). Section 7B-906(b) provides for the cessation of periodic review hearings if the trial court finds:
(1) The juvenile has resided with a relative or has been in the custody of another suitable person for a period of at least one year;
(2) The placement is stable and continuation of the placement is in the juvenile's best interests;
(3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months;
(4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion; and
(5) The court order, has designated the relative or other suitable person as the juvenile's permanent caretaker or guardian of the person.
N.C. Gen.Stat. § 7B-906(b) (2007). Our review of the record shows that each of these factors was properly addressed in the trial court's permanency planning order. Accordingly, respondent's argument on this issue is without merit.
Next, respondent contends that the trial court failed to male findings of fact that T.R.M. still was dependent as of the date of the permanency planning hearing. No such finding is required by section 7B-907, however, and the trial court did not err by failing to address the continued dependency of the minor child. Accordingly, this argument is overruled.
In her final assignment of error, respondent contends that the trial court (1) *632 failed to give her one full year to comply with her case plan; and (2) erred in changing the permanent plan to guardianship. She argues that the court should have ordered DSS to continue with its attempts to reunify T.R.M. with respondent. We disagree.
Section 7B-907(a) requires a trial court to hold a permanency planning hearing "within 12 months after the date of the initial order removing custody" in order "to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen.Stat. § 7B-907(a) (2007). If further permanency planning hearings are required, they are to be held at least every six months and for the purpose of allowing the trial court either to review progress toward finalizing the permanent plan or, if necessary, to change to a new permanent plan. See id. The trial court may consider granting guardianship of the juvenile to a relative as part of the permanent plan. See N.C. Gen.Stat. 7B-907(e) (2007). Nothing in the permanency planning statute requires the trial court to allow a respondent a certain period of time to comply with directives in order that the juvenile may be returned to the home. The only requirement of the trial court is to make necessary findings of fact when a juvenile is not returned to his or her home. See N.C. Gen.Stat. 7B-907(b) (2007).
As we held supra, the trial court made the necessary findings of fact pursuant to section 7B-907(b). Therefore, the court did not err in deciding the child was not likely to be returned home within the next six months, nor did the court err in changing the permanent plan to guardianship and relieving DSS of its obligation to continue with reunification efforts. Accordingly, this assignment of error is overruled.
Affirmed.
Judges TYSON and GEER concur.
NOTES
[1] Although we are not bound by prior unpublished opinions, see State v. Pritchard, ___ N.C.App. ___, ___, 649 S.E.2d 917, 918 (2007), we note that in several unpublished opinions, this Court has found no error in a trial court's finding of fact that departed from the language of possibility in section 7B-907(b)(1), See, e.g., In re C.H., No. COA06-1041, 2007 WL 1247058, at *5-6, 2007 N.C.App. LEXIS 890, at *17-18 (N.C.Ct.App. May 1, 2007) (holding "the trial court made sufficient independent findings of fact as required by [section] 7B-907(b)(1)" based, in part, upon the trial court's finding that "it is not possible for the child, [C.H.], to be returned to the home immediately nor is it likely within the next six months." (second alteration in original) (emphasis added)); In re L.B., No. COA05-1565, 2006 WL 1677866, at *4, 2006. N.C.App. LEXIS 1289, at *10 (N.C. Ct.App. June 20, 2006) (holding that the trial court complied with section 7B-907(b)(1) based upon the finding of fact that "[i]t is not anticipated that the child will be returned to the parents within the next six (6) months." (alteration in original) (emphasis added)).
[2] Accord In re Metricom, Inc., 275 S.R. 364, 371 (Bankr.N.D.Cal.2002) ("[A]nything is possible under the infinite number of potential fact patterns that might ever arise."); United States v. Watkins, 983 F.2d 1413, 1424 (7th Cir.1993) (Easterbrook, J., dissenting) ("[A]nything is possible in a world of quantum mechanics."); United States v. New York, 552 F.Supp. 255, 262 (N.D.N.Y.1982) ("`[T]he great Voltaire once wrote [that] anything is possible in this best of all possible worlds.'" (quoting Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co., 604 F.2d 755, 759 (2d Cir.1979))), aff'd, 708 F.2d 92 (2d Cir.1983) (per curiam), cert. denied, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984); see also State v. Poh, 116 Wis.2d 510, 343 N.W.2d 108, 120 (1984) (Steinmetz, J., concurring) (noting that "[t]rial judges for years have said in regard to questions containing the word `possibility' that anything is possible.").