ZACHARY, Judge.
 

 *438
 
 Ms. E.B. ("respondent") appeals from an order establishing a guardianship for her minor child M.B. ("Max").
 
 [2]
 
 We affirm.
 

 I. Background
 

 The Durham County Department of Social Services ("DSS") initiated the underlying juvenile case on 10 December 2012, when it obtained non-secure custody of Max and filed a petition alleging that he was a neglected and dependent juvenile. The trial court adjudicated Max to be a dependent juvenile by order entered 16 January 2013. In its disposition order entered 15 March 2013, the trial court continued custody of Max with DSS, granted respondent weekly supervised visitation with Max, and ordered respondent to: (1) obtain substance abuse and mental health evaluations and follow any recommendations; (2) establish and maintain mental health services and comply with all recommendations; (3) submit to testing for Huntington's disease; (4) obtain stable housing and a stable source of income; and (5) participate in a parenting program.
 
 In re M.B
 
 ., --- N.C. App. ----,
 
 785 S.E.2d 782
 
 (2016) (unpublished) ("
 
 M.B. I
 
 ")
 

 The court initially set the permanent plan for Max as reunification with a parent, but respondent's mental health deteriorated and she failed to comply with the trial court's orders.
 
 See M.B. I.
 
 On 3 April 2014, the trial court appointed a guardian ad litem ("GAL") for respondent, finding that she lacked sufficient capacity to proceed on her own behalf. In an order entered 28 May 2014, the court ceased reunification efforts with respondent and changed the permanent plan for Max to custody with Ms. J.M. ("Ms. Metz"), his paternal great-grandmother, with an alternative plan of reunification with respondent. Max has lived in the home of Ms. Metz "continuously since June 6, 2014, during which time [Ms. Metz] has been both a placement provider and a guardian of the child." By order entered 15 December 2014, the trial court changed Max's permanent plan to guardianship with Ms. Metz, appointed Ms. Metz as his guardian, and suspended respondent's visitation until she could show that "her mental health has stabilized."
 

 Respondent attempted to appeal from the trial court's 15 December 2014 order, but the trial court dismissed her appeal. By order entered 28 May 2015, this Court issued a writ of certiorari to review both the 15 December 2014 permanency planning review order and the order dismissing respondent's appeal. In our opinion in
 
 M.B. I
 

 ,
 
 this Court
 
 *439
 
 affirmed the trial court's order dismissing respondent's appeal of right, but vacated and remanded the trial court's permanency planning order because the court had failed to verify that Ms. Metz had adequate financial resources to care for Max.
 

 On 8 August 2016, the trial court conducted another permanency planning review hearing, wherein it considered further evidence of Ms. Metz's financial ability to care for Max. On 26 August 2016, the trial court signed an order appointing Ms. Metz as Max's guardian. In its order, the court found that Ms. Metz, Max, and other members of Ms. Metz's family were living in Cleves, Ohio. The court further found that Ms. Metz had adequate resources to care for Max and that she understood the legal rights and responsibilities she would have as Max's guardian. The court directed respondent to participate in services recommended by DSS, suspended respondent's visitation with Max until she
 
 *759
 
 showed to the court that her mental health had stabilized, ceased further reviews in the juvenile case, and released DSS, Max's GAL, and the parties' counsel of further duties. Within a month of the entry of this order, Ms. Metz moved back to Durham, North Carolina. Accordingly, when respondent filed a notice of appeal, she served it on Ms. Metz at her address in Durham, North Carolina.
 

 II. Interstate Compact on the Placement of Children
 

 Respondent first argues that the trial court erred by appointing Ms. Metz as Max's guardian without first complying with the requirements of the Interstate Compact on the Placement of Children ("ICPC" or "Compact"). Respondent contends that because Ms. Metz "was a resident of Ohio at the time" of the entry of the permanency planning order, the trial court's order must be "reversed and vacated, and this matter should be remanded for compliance with the ICPC[.]" We conclude that this argument has been rendered moot by Ms. Metz's return to North Carolina.
 

 An issue "is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. Black's Law Dictionary 1008 (6th ed. 1990). 'Courts will not entertain or proceed with a cause merely to determine abstract propositions of law.' "
 
 Roberts v. Madison Cty. Realtors Ass'n
 
 ,
 
 344 N.C. 394
 
 , 398-99,
 
 474 S.E.2d 783
 
 , 787 (1996) (quoting
 
 In re Peoples
 
 ,
 
 296 N.C. 109
 
 , 147,
 
 250 S.E.2d 890
 
 , 912 (1978) ). "It is well-established that 'courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, declare social status, deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate
 
 *440
 
 academic matters, provide for contingencies which may hereafter rise, or give abstract opinions.' "
 
 In re Accutane Litig
 
 .,
 
 233 N.C.App. 319
 
 , 326,
 
 758 S.E.2d 13
 
 , 19 (2014) (quoting
 
 Baxter v. Jones
 
 ,
 
 283 N.C. 327
 
 , 332,
 
 196 S.E.2d 193
 
 , 196 (1973) ). For example, in
 
 In re Stratton
 
 ,
 
 159 N.C.App. 461
 
 ,
 
 583 S.E.2d 323
 
 ,
 
 appeal dismissed
 
 ,
 
 357 N.C. 506
 
 ,
 
 588 S.E.2d 472
 
 (2003), the respondent appealed from an adjudication of neglect and dependency. During the pendancy of the appeal, respondent's parental rights to the child were terminated. This Court dismissed the respondent's appeal as moot, holding that the "questions raised by [respondent] on this appeal are now academic given [the trial court's] order terminating his parental rights."
 
 Stratton
 
 ,
 
 159 N.C.App. at 463
 
 ,
 
 583 S.E.2d at 324
 
 .
 

 In the present case, appellee DSS contends that we should dismiss as moot respondent's argument that the trial court erred by failing to comply with the ICPC prior to designating Ms. Metz as Max's guardian. DSS argues that because "the Guardian has moved back to North Carolina, there is no longer an issue of controversy related to the ICPC." Respondent has requested that this case be remanded for "for further proceedings consistent with the ICPC." We agree with DSS that "[s]ince the ICPC no longer applies, there is no hearing for the [trial court] to conduct in accordance with the ICPC."
 

 We note that respondent's appeal on this issue is premised on the fact that "[Ms. Metz] was a resident of Ohio
 
 at the time
 
 " that the permanency planning order was entered. (emphasis added). At no point in her appellate brief does respondent contend that Ms. Metz continues to reside in Ohio, and respondent has not disputed DSS's assertion that Ms. Metz no longer lives in Ohio. Moreover, review of the record shows that respondent served her notice of appeal on Ms. Metz at 606 Hugo Street, Durham, North Carolina, 27704. Thus, respondent clearly is aware that Ms. Metz returned to North Carolina shortly after the entry of the order from which she appeals. In addition, respondent does not argue that the facts of this case fall within an exception to the mootness doctrine. We conclude that the issue of the applicability of the ICPC has been rendered moot by Ms. Metz's return to North Carolina. Accordingly, we do not address this issue.
 

 III. Parental Rights Retained by Respondent
 

 Respondent also argues that the trial court erred in failing to designate what parental rights, if any, she retained following the establishment of the guardianship. Respondent contends that the trial court failed to comply with the requirements of N.C. Gen. Stat. § 7B-906.1(e)(2) (2015), which provides that:
 

 *760
 

 *441
 
 (e) At any permanency planning hearing where the juvenile is not placed with a parent, the court shall additionally consider the following criteria and make written findings regarding those that are relevant:
 

 ...
 

 (2) Where the juvenile's placement with a parent is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established and, if so, the rights and responsibilities that should remain with the parents.
 

 On appeal, respondent asserts that the trial court was required to make findings about her rights in regard to the following:
 

 [A]mong the intended rights for consideration and designation by the court are: (1) the right to attend or know about health care procedures for Max; (2) the right to communicate with the guardian about Max; (3) the right to attend special events in which Max was a participant; (4) the right to know about changes in Max's address or custody; (5) the right to know about Max's illnesses and prescribed treatments; (6) the right to know about Max's progress in school; and, (7) the right to send gifts for Christmas and birthdays.
 

 Respondent has not cited any authority or offered any legal argument in support of her assertion that the rights identified by respondent are "among the intended rights for consideration and designation by the court." Nor has respondent cited any authority holding, as respondent appears to contend, that the trial court was required to make specific findings about every right that respondent might possibly retain. Respondent asserts that N.C. Gen. Stat. § 7B-906.1(e)(2) "requires the lower court to establish the rights and responsibilities" that remain with a respondent following the establishment of a guardianship, and cites
 
 In re R.A.H
 
 .,
 
 182 N.C.App. 52
 
 ,
 
 641 S.E.2d 404
 
 (2007), for the proposition that "failure to make findings about these rights is reversible error."
 
 R.A.H.
 
 did not, however, articulate a general rule on the extent to which a trial court is required to address specified rights that a parent might retain after guardianship is established. In
 
 R.A.H.
 
 the record showed that the trial court had placed responsibility for determining the appellant's visitation rights with the minor child's guardian. We noted that the trial court may not delegate its responsibility for awarding visitation and remanded "on that issue to the trial court for clarification[.]"
 

 *442
 

 R.A.H
 
 ,
 
 182 N.C.App. at 61
 
 ,
 
 641 S.E.2d at 410
 
 .
 
 R.A.H.
 
 does not support respondent's contention that the trial court was required to make extensive findings on a number of possible "rights" of a parent.
 
 See also
 

 In re T.R.M.
 
 ,
 
 188 N.C.App. 773
 
 , 780,
 
 656 S.E.2d 626
 
 , 631 (2008) (holding under identical language of a prior statute, N.C. Gen. Stat. § 7B-907(b)(2) (2007), that in granting guardianship of a child to the child's grandparents, the trial court sufficiently addressed the respondent-mother's rights and responsibilities "by providing her visitation rights and clear guidance as to the limitations upon those visitation rights").
 

 Respondent would append to N.C. Gen. Stat. § 7B-906.1(e)(2) an additional requirement that a trial court make findings that constitute individual decisions on whether a parent retains every right or responsibility the parent had prior to the grant of custody or guardianship. We conclude that when a child is placed in the custody or guardianship of another person, the parent's rights and responsibilities, apart from visitation, are lost if the trial court's order does not otherwise provide.
 

 Here, the trial court's order specifically provided that respondent's visitation with Max shall remain suspended until she shows that her mental health has stabilized. The court did not list any other right or responsibility that respondent retained to Max, and thus she retained none. Accordingly, we find the trial court complied with the requirements of N.C. Gen. Stat. § 7B-906.1(e)(2), and we overrule this argument.
 

 Respondent does not otherwise challenge the trial court's order granting guardianship of Max to Ms. Metz, and we affirm the order.
 

 AFFIRMED.
 

 Judges ELMORE and HUNTER, JR. concur.
 

 [2]
 

 We have used pseudonyms to protect the juvenile's identity and for ease of reading.