MICHAEL KINLAW, Plaintiff v. JOHN J. HARRIS, JR., M.D., Defendant

No. COA08-1584

(Filed 8 December 2009)

### Judgments— exempt status of IRA—withdrawn IRA funds

The trial court erred by requiring defendant to place funds withdrawn from his IRAs in the future into escrow or other trust pending a determination by the trial court as to whether those funds remained exempt from plaintiff's judgment against defendant for $567,000 in compensatory and punitive damages. N.C.G.S. § 1C-1601(a)(9) exempts defendant's IRAs and defendant's legal use of funds contained within those IRAs from plaintiff's judgment.

Judge ERVIN concurring in part and dissenting in part.

Appeals by Plaintiff and Defendant from order entered 21 July 2008 by Judge Gary L. Locklear in Superior Court, Robeson County. Heard in the Court of Appeals 19 August 2009.

*Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by Steven C. Lawrence, for Plaintiff.*

*McCoy Weaver Wiggins Cleveland Rose Ray, PLLC, by Jim Wade Goodman, for Defendants.*

McGEE, Judge.

The underlying judgment in this case was entered on 3 May 2004, in which Plaintiff was awarded $567,000.00 in compensatory and punitive damages. Defendant moved to claim certain property as exempt from Plaintiff's judgment on 9 June 2004. By order entered 16 July 2004, an assistant clerk of Robeson County Superior Court ordered that Defendant's two IRA accounts and other items not relevant to this appeal were exempt property and not subject to the 3 May 2004 judgment. Upon Plaintiff's motion, a writ of execution was

issued 28 November 2005 by another assistant clerk of Robeson County Superior Court, which directed the Sheriff of Durham County to satisfy the 3 May 2004 judgment out of Defendant's personal and/or real property located in Durham County, including Defendant's two IRAs.[1] In response, Defendant filed a motion on 21 November 2007 to affirm exemption and vacate the 28 November 2005 writ of execution.

By order entered 21 July 2008, the trial court affirmed the 9 June 2004 motion to claim exempt property, stating:

> By virtue of the Motion to Claim Exempt Property dated June 9, 2004 . . . and the order thereon dated July 16, 2004 . . . , the Subject IRAs were and are legally exempt from execution in this action, and [Defendant], subject to the other provisions in this order, retains the Subject IRAs free of the enforcement of the claims of [Plaintiff] in this action.

The trial court further declared the writ of execution and the accompanying levy against Defendant void, and it ordered Defendant's IRAs immediately released from any restrictions "placed thereon as a result of the Writ of Execution and Notice of Levy[.]" However, the trial court further ordered in relevant part that:

> Should [D]efendant make any withdrawal of any funds from the Subject IRAs, the entire amount of said withdrawal shall immediately be placed in the trust account of his counsel, [or other authorized agent], and [the funds shall be administered] in accordance with the terms herein. Defendant or [Defendant's] counsel shall immediately thereafter give [P]laintiff's counsel notice of the withdrawal by the most expedient, verifiable means. Plaintiff shall then have five (5) business days from the date of such notification to file a motion or otherwise petition the Court to determine if the withdrawal funds are no longer exempt from execution. . . . If [P]laintiff timely makes such a motion or petition, the withdrawn funds shall remain in trust or escrow pending a determination of their exempt status, or until the parties mutually agree to release of such funds.

---

1. One of the retirement account numbers was listed in Defendant's motion for exemption and Defendant's motion to affirm exemption and vacate writ of execution as "Y99-254911." In the writ of execution one of the retirement account numbers was listed as "Y99-15491" and in a 19 May 2008 affidavit by Defendant, one of his retirement account numbers was listed as "Y99-154911." No argument has been made on appeal concerning the discrepancies between the account number for this retirement account, and we assume these numbers all refer to the same account. The second retirement account is listed as "Y99-037842" in all four documents.

Both Plaintiff and Defendant appeal from the trial court's 21 July 2008 order.

I.

Defendant's sole argument on appeal is that the trial court erred by requiring Defendant to place any funds withdrawn in the future from his IRAs into escrow or other trust pending a determination by the trial court as to whether those funds retained their exempt status. We agree.

N.C. Gen. Stat. § 1C-1601 identifies property that is exempt from claims of creditors. The version of N.C. Gen. Stat. § 1C-1601 in effect for the relevant period states:

(a)  Exempt property. Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors:

. . . .

(9) Individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code[.]

N.C. Gen. Stat. § 1C-1601(a)(9) (2005). Plaintiff admits that Defendant's IRAs are covered under the definition of exempt retirement plans as stated in N.C. Gen. Stat. § 1C-1601(a)(9). However, Plaintiff contends that N.C. Gen. Stat. § 1C-1601(a)(9) only applies to funds withdrawn after age 59 ½, or pursuant to certain other limited exceptions. Plaintiff argues that if Defendant withdraws funds before age 59 ½ and incurs a penalty for the withdrawal, because no exception applies, then Plaintiff should be able to access those funds to satisfy Plaintiff's judgment against Defendant. For this reason, Plaintiff argues that the trial court acted within its power by ordering that any funds withdrawn from Defendant's IRAs be held in escrow until a determination is made by the trial court as to whether the funds were withdrawn for proper purposes—i.e., purposes which would not incur any early withdrawal penalties.

Defendant argues that, because N.C. Gen. Stat. § 1C-1601(a)(9) exempts his IRAs from Plaintiff's judgment against him, Plaintiff is not entitled to any funds currently held in Defendant's IRAs, and the trial court erred in ordering a process to make a determination concerning whether Plaintiff is entitled, pursuant to the 3 May 2004 judg-

ment, to any potential funds Defendant withdraws from his IRAs. This issue is one of first impression in this State.

> Exemption statutes are to be interpreted liberally. Accordingly, based on: (1) the enactment of legislation in 1995 to protect a debtor's retirement income from the claims of creditors; . . . and (4) the policy that exemption statutes are to be interpreted liberally, the Court concludes that the North Carolina General Assembly's purpose in enacting N.C. Gen. Stat. § 1C-1601(a)(9) was to protect a debtor's right to receive retirement benefits[.] Rather than give a blanket exemption to all "retirement" plans, the General Assembly limited the exemption to any retirement tool that was "treated in the same manner as an individual retirement plan under the Internal Revenue Code." In so doing, the General Assembly prohibited debtors from labeling an ordinary savings account as an individual retirement plan and thereby shielding that asset from the reach of creditors under the charade that the exemption statute applied.

*In re Grubbs*, 325 B.R. 151, 154-55 (Bankr. M.D.N.C. 2005) (internal citation omitted); *see also Elmwood v. Elmwood*, 295 N.C. 168, 185, 244 S.E.2d 668, 678 (1978); *In re Laughinghouse*, 44 B.R. 789, 791 (Bankr. E.D.N.C. 1984) ("The courts have held that the exemption laws in North Carolina must be liberally construed in favor of the debtor."), *Abrogated on different issue by In re Pinner*, 146 B.R. 659 (Bankr. E.D.N.C. Oct 26, 1992).

II.

In *Rousey v. Jacoway*, 544 U.S. 320, 161 L. Ed. 2d 563 (2005), the United States Supreme Court reasoned:

> The statutes governing IRAs persuade us that [the petitioners'] right to payment from IRAs is causally connected to their age. Their right to receive payment of the entire balance is not in dispute. Because their accounts qualify as IRAs under 26 U.S.C. § 408(a) (2000 ed. and Supp. II) [26 USCS § 408(a)], the [petitioners] have a nonforfeitable right to the balance held in those accounts, § 408(a)(4). That right is restricted by a 10-percent tax penalty that applies to withdrawals from IRAs made before the accountholder turns 59 ½. Contrary to [the respondent's] contention, this tax penalty is substantial. The deterrent to early withdrawal it creates suggests that Congress designed it to preclude early access to IRAs. The low rates of early withdrawals are consistent with the notion that this penalty substantially deters

early withdrawals from such accounts. Because the 10-percent penalty applies proportionally to any amounts withdrawn, it prevents access to the 10-percent that the [petitioners] would forfeit should they withdraw early, and thus it effectively prevents access to the entire balance in their IRAs. It therefore limits the [petitioners'] right to "payment" of the balance of their IRAs. And because this condition is removed when the accountholder turns age 59 ½, the [petitioners'] right to the balance of their IRAs is a right to payment "on account of" age. The [petitioners] no more have an unrestricted right to payment of the balance in their IRAs than a contracting party has an unrestricted right to breach a contract simply because the price of doing so is the payment of damages.

*Rousey*, 544 U.S. at 327-28, 161 L. Ed. 2d at 571-72 (footnotes omitted). Following the reasoning of *Rousey*, we hold that Defendant's right to withdraw funds from his IRAs is not "unrestricted," and thus his IRAs are not analogous to checking accounts or other nonrestricted accounts. *Grubbs*, 325 B.R. at 155.

The statute pertaining to exemptions from judgments, N.C. Gen. Stat. § 1C-1601(a)(9), references the Internal Revenue Code only as it pertains to the definition of retirement plans: "Individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code[.]" There is no dispute that Defendant's IRAs fall within this definition. N.C. Gen. Stat. § 1C-1601(a)(9) does not indicate that any other provisions of federal law may be consulted in determining whether Defendant's IRAs, or the funds contained within, are exempt from Plaintiff's judgment. Defendant argues that only North Carolina law should apply. Plaintiff does not answer Defendant's argument on this point. We hold that, because N.C. Gen. Stat. § 1C-1601(a)(9) only references the Internal Revenue Code to clarify what retirement accounts are covered by the creditor exemption, North Carolina law governs the resolution of this issue. *See In re Coppola*, 419 F.3d 323, 329 (5th Cir. Tex. 2005); *In re Rayl*, 299 B.R. 465, 467 (Bankr. S.D. Ohio 2003).

Because this is an issue of first impression, however, we look for guidance to decisions from other jurisdictions. In *In re Brucher*, 243 F.3d 242, 243 (6th Cir. Mich. 2001), the plaintiff argued that the defendant's IRA could be exempt from creditors "if and only if payment thereunder is made 'solely . . . "on account of illness, disability, death, age or length of service." ' " The Sixth Circuit disagreed, stating:

This reading, in our view, suffers from at least two flaws. In the first place, § 522(d)(10)(E) does not contain the word "solely"; it merely provides that the payment must be made "on account of" age. Like pensions, IRAs are structured to provide maximum payments upon the participant's reaching a certain age. The fact that early withdrawal might be available—subject, in the case of IRAs, to a 10 percent penalty for withdrawals made before the beneficiary has attained the age of 59 ½, *see* 26 U.S.C. § 72(t)(1)—is irrelevant, as the statute does not require that the payment be made "solely" on account of age.

*Brucher*, 243 F.3d 242, 243-44; *see also Clark v. Lindquist*, 683 N.W.2d 784, 787 (Minn. 2004) ("[I]t seems to us that our legislature clearly intended that IRAs generally be exempt by expressly listing them, in contrast to 11 U.S.C. § 522(d)(10)(E), which does not mention them by name. Furthermore, the debtor's access to the funds is not completely unfettered."); *Rayl*, 299 B.R. at 467 ("Section 2329.66(A)(10)(c) of the Ohio Revised Code specifically refers to individual retirement accounts, individual retirement annuities, Roth IRA's and education IRA's. Unlike the Michigan statute at issue in [*Lampkins v. Golden*, 28 Fed. Appx. 409 (6th Cir. Jan. 17, 2002)], it does not reference the whole of § 408 of the Internal Revenue Code. Furthermore, the Ohio statute exempts [rollover IRA's] only to the extent that the contributions are less than or equal to . . . the applicable limits imposed by federal statutes.").

We note that even where a statute makes specific reference to payments made from IRAs, appellate courts have tended to refer to IRAs in general, and not specifically to withdrawal of funds from IRAs, even when the withdrawal of funds was in issue.

The parties have not argued, so we do not decide, that there is a difference between exempting the right to receive payment from an IRA versus exempting the IRA itself. The Supreme Court does not appear to perceive any difference of significance. Compare *Rousey*, 544 U.S. at 325 ("the right to receive payment may be exempted"), with *id.* at 326 ("IRAs can be exempted"). Hence, we, too, will assume the semantic interchangeability and refer to exempting both in this opinion.

*In re Krebs*, 527 F.3d 82, 85 n.3 (3d Cir. Pa. 2008). *See also Brucher*, 243 F.3d at 243-44; *Clark*, 683 N.W.2d at 787; *In re Rayl*, 299 B.R. at 467.

Statutes from certain other jurisdictions include express limitations on the exemption from creditors enjoyed by retirement funds. *See* e.g., 11 U.S.C. § 522(d)(10)(E); Ga. Code Ann. § 44-13-100(2)(f); Minn. Stat. § 550.37(24)(a); Ohio Rev. Code Ann. § 2329.66(A)(10)(b). N.C. Gen. Stat. § 1C-1601(a)(9) contains no such restrictions. Plaintiff's reliance on *Krebs* for the proposition that the trial court acted correctly in reserving the right to determine whether Defendant's withdrawals are for proper purposes is misplaced, as the relevant statute in *Krebs*, 11 U.S.C. § 522(d)(10)(E), includes express restrictions not included in N.C. Gen. Stat. § 1C-1601(a)(9).

We find the reasoning in the cases cited above persuasive. N.C. Gen. Stat. § 1C-1601(a)(9) does not contain any language evincing an intent on the part of the General Assembly to treat withdrawals from IRAs differently than funds held within IRAs, and we are not prepared to infer any such intent. The plain language of N.C. Gen. Stat. § 1C-1601(a)(9) states that IRAs are exempt from judgment. The most straightforward and logical reading of N.C. Gen. Stat. § 1C-1601(a)(9) is that not only are the IRAs themselves exempt, but Defendant's legal use of the IRAs, in the same manner as if there were no judgment against Defendant, is also exempt. *See Krebs*, 527 F.3d at 85 n.3; *Brucher*, 243 F.3d at 243-44.

Logically and practically this interpretation is the most sensible. As stated in *Rousey*, any early withdrawals not covered by the limited exemptions made by Defendant from his IRAs will incur serious financial penalties. *Rousey*, 544 U.S. at 327-28, 161 L. Ed. 2d at 571-72. This is Defendant's choice to make, however. Though early withdrawals from Defendant's IRAs may subject Defendant to serious financial penalties and prevent him from realizing the full financial benefit of the protected status of his IRAs, early withdrawals from IRAs are not illegal and do not constitute improper use of those IRAs.

While we understand the dissent's concern that the protections afforded by N.C. Gen. Stat. § 1C-1601(a)(9) could allow an IRA account holder to withdraw IRA monies for purposes unrelated to retirement or other penalty-free exceptions, it is the province of the General Assembly, not this Court, to craft legislation. The dissent correctly states that there is no express exception in N.C. Gen. Stat. § 1C-1601(a)(9) providing an exemption from creditors for monies withdrawn from an IRA prior to the account holder reaching the age of 59 ½, or for any of the other penalty-free exemptions provided for by the IRS. In support of its argument, the dissent cites *Sara Lee*

*Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (1999), stating that "*[g]enerally speaking*" (emphasis added),

> where the legislature has made no exception to the positive terms of the statute, the presumption is that it intended to make none, and it is a general rule of construction that the courts have no authority to create, and will not create, exceptions to the provisions of a statute not made by the act itself.

*Id.* at 36, 519 S.E.2d at 313. Although we agree that the rule of statutory construction cited in *Sara Lee* is an appropriate rule of construction in certain circumstances, there are many rules of statutory construction, and not every rule will be appropriate in any given case. We believe this rule is inappropriate on the facts before us, as the ultimate result of its use could lead to results we believe were not intended by the General Assembly.

If we were to find this particular rule of construction controlling in the case before us, we would be constrained to hold that *no* funds are ever fully protected from execution once they are withdrawn from an IRA. This would include funds withdrawn after the age of 59 ½, penalty-free and for the purposes of support in retirement, because the language of N.C. Gen. Stat. § 1C-1601(a)(9) contains no exception for funds withdrawn after the IRA account holder reaches the age of 59 ½ ("Individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code [are exempt from the claims of creditors.]"). Even Plaintiff does not construe N.C. Gen. Stat. § 1C-1601(a)(9) in this manner. As the General Assembly has not included language in N.C. Gen. Stat. § 1C-1601(a)(9) excluding the use of *any* IRA funds from the creditor exemption, we cannot usurp the role of the General Assembly and decide that some uses of withdrawn IRA funds will not be exempt, while other uses will be.

As we previously stated, it is not illegal, or on its face unethical, to withdraw IRA funds early for any reason. Early withdrawal of funds, when not covered by one of the exceptions created by the United States Congress is, however, discouraged by the substantial early withdrawal penalty.

We therefore hold, liberally construing the statute in favor of Defendant, *Elmwood*, 295 N.C. at 185, 244 S.E.2d at 678; *Laughinghouse*, 44 B.R. at 791, that N.C. Gen. Stat. § 1C-1601(a)(9) exempts Defendant's IRAs and Defendant's legal use of funds con-

tained within those IRAs, from Plaintiff's judgment. As the issue is not before us, we do not make any holding regarding any question concerning contributions Defendant may have made, or may in the future make, to his IRAs.

### III.

We therefore vacate that portion of the trial court's 21 July 2008 order requiring Defendant to place in escrow any funds he may withdraw from his IRAs to await decision by the trial court as to whether the funds are subject to Plaintiff's judgment. We affirm the remainder of the trial court's 21 July 2008 order. Our holding in Defendant's appeal has also decided Plaintiff's appeal of the trial court's order. We therefore do not address Plaintiff's appeal.

Affirmed in part, vacated in part.

Judge JACKSON concurs.

Judge ERVIN concurs in part and dissents in part with a separate opinion.

ERVIN, Judge, concurring in part and dissenting in part.

Although I concur in the remainder of the Court's decision, including its determination that N.C. Gen. Stat. § 1C-1601(a)(9) renders funds contained in Defendant's individual retirement accounts exempt from execution despite the fact that Defendant had withdrawn monies from those accounts on two prior occasions, I respectfully dissent from the Court's decision to vacate that portion of the trial court's order that requires Defendant to notify Plaintiff of any withdrawal from his individual retirement accounts and allows Plaintiff five business days "to file a motion or otherwise petition the Court to determine if the withdrawn funds are no longer exempt from execution." As a result, I concur in the Court's opinion in part and dissent in part.

Both parties and the Court agree that the extent to which Defendant's individual retirement accounts can be utilized to satisfy the judgment that Plaintiff obtained against Defendant hinges upon the proper interpretation of N.C. Gen. Stat. § 1C-1601(a)(9). As applied to judgments entered before 1 January 2006, N.C. Gen. Stat. 1C-1601(a)(9) provided that:

**KINLAW v. HARRIS**

[201 N.C. App. 252 (2009)]

(a) Exempt property. Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors:

. . . .

(9) Individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code. For purposes of this subdivision, "Internal Revenue Code" means Code as defined in G.S. 105-228.90.

"The courts have held that the exemption laws in North Carolina must be liberally construed in favor of the debtor." *In re Laughinghouse*, 44 B.R. 789, 791 (Bankr. E.D.N.C. 1984) (citing *In re Love*, 42 B.R. 317 (Bankr. E.D.N.C. 1984)); *see also Elmwood v. Elmwood*, 295 N.C. 168, 185, 244 S.E.2d 668, 678 (1978) (stating that exemptions "should always receive a liberal construction, so as to embrace all persons fairly coming within their scope") (quoting *Goodwin v. Claytor*, 137 N.C. 224, 236, 49 S.E. 173, 177 (1904)). In seeking to subject the funds contained in Defendant's individual retirement accounts to execution, Plaintiff argues that Defendant structured his court-approved equitable distribution settlement with his former spouse so as to transfer any of their marital assets that might have been subject to execution to his former wife; that the only significant assets that Defendant retained were the individual retirement accounts at issue here; and that, as evidenced by two withdrawals made in 2004 and 2005, Defendant used these individual retirement accounts as private savings vehicles rather than to provide for his retirement. Aside from the fact that two withdrawals over a four year period does not, at least in my opinion, establish the validity of Plaintiff's factual argument, Plaintiff has cited no authority demonstrating that N.C. Gen. Stat. § 1C-1601(a)(9) is subject to an exception of the nature for which he contends, and I have not discovered any in the course of my own work. Generally speaking, "where the legislature has made no exception to the positive terms of the statute, the presumption is that it intended to make none, and it is a general rule of construction that the courts have no authority to create, and will not create, exceptions to the provisions of a statute not made by the act itself." *Sara Lee Corp. v. Carter*, 351 N.C. 27, 36, 519 S.E.2d 308, 313 (1999) (quoting *Upchurch v. Hudson Funeral Home, Inc.*, 263 N.C. 560, 565, 140 S.E.2d 17, 21

(1965)).[2] As a result, given the plain language of N.C. Gen. Stat. § 1C-1601(a)(9), given the fact that the accounts at issue are clearly individual retirement accounts as defined in N.C. Gen. Stat. § 1C-1601(a)(9), and given the absence of any justification for reading the relevant statutory language to mean something other than what it says, I agree with the majority's affirmation of the trial court's decision to "vacate[] and declare[] to be null and void" "[t]he Writ of Execution in this matter dated" 28 November 2005 and to "vacate[] and declare[] to be null and void" "[t]he 'Notice of Levy' dated" 9 December 2005.

I cannot, however, agree with the remainder of the Court's decision, which vacates that portion of the trial court's order providing:

4. Should defendant make any withdrawal of any funds from the Subject IRAs, the entire amount of said withdrawal shall immediately be placed in the trust account of his counsel, or placed with a suitable escrow agent who shall be provided with a copy of this order, and shall administer the funds in accordance with the terms herein. Defendant or his counsel shall immediately thereafter give plaintiff's counsel notice of the withdrawal by the most expedient, verifiable means. Plaintiff shall then have five (5) business days from the date of such notification to file a motion or otherwise petition the Court to determine if the withdrawn funds are no longer exempt from execution. Should the plaintiff fail to make such a motion or petition within such time, the withdrawn funds shall be paid over to defendant, free from execution and levy by plaintiff. If plaintiff timely makes such a motion or petition, the withdrawn funds shall remain in trust or escrow pending a determination of their exempt status, or until the parties mutually agree to release of such funds. The parties shall endeavor and cooperate so as to have the Court determine the status of

---

2. The Court contends that my reference to the principle of statutory construction enunciated in *Sara Lee* "is inappropriate on the facts before us, as the ultimate result of its use could lead to results we believe were not intended by the General Assembly." A careful reading of this dissent indicates, however, that I have cited *Sara Lee* in support of my conclusion that the trial court correctly rejected Plaintiff's contention that N.C. Gen. Stat. § 1C-1601(a)(9) should be construed to allow the corpus of individual retirement accounts to be subject to execution in the event that the account owner makes early withdrawals and not in support of my conclusion that the notification provision of the trial court's order should be upheld on appeal. I do not believe that the Court disagrees with the position in connection with which I have cited *Sara Lee*.

the withdrawn funds as expeditiously as possible after any motion or petition seeking such a determination is filed.

In challenging the notification provision, Defendant concedes that the specific issue that he raises on appeal has not been directly addressed by the Supreme Court or by this Court. For that reason, he relies primarily on certain fundamental principles that he believes to be pertinent. First, Defendant emphasizes that exemptions from execution "should always receive a liberal construction," *Elmwood*, 295 N.C. at 185, 244 S.E.2d at 678, and that "provisions which restrict a debtor's access to his exemptions should be construed narrowly," so that debtors have "a great deal of flexibility in claiming and maintaining their exemptions." *Household Fin. Corp. v. Ellis*, 107 N.C. App. 262, 266, 419 S.E.2d 592, 595 (1992), *aff'd*, 333 N.C. 785, 429 S.E.2d 716 (1993). Secondly, Defendant points to the basic principle of statutory construction that, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Union v. Branch Banking & Trust Co.*, 176 N.C. App. 711, 717, 627 S.E.2d 276, 279 (2006) (quoting *Mazda Motors of Am., Inc. v. SW. Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979)). In reliance upon these premises, Defendant argues that "an interpretation of N.C. [Gen. Stat. §] 1C-1601(a)(9) which exempts funds while physically in an IRA account, but immediately strips the funds of their exempt status once withdrawn by the debtor for whose benefit[] the exemption was enacted, is in fact absurd, as it renders the exemption meaningless and useless[.]" According to Defendant, "[a] more reasonable interpretation that avoids such an absurd result, gives effect to the legislative purpose of the exemption, and is more consistent with the principle of liberal construction for the protection of the debtor, is that it is the funds themselves that are exempt . . ., a status that doesn't change merely due to the funds being 'poured' from the IRA." As a result, Defendant's challenge to the notification provision rests exclusively on the contention that all funds ever contained within an individual retirement account are exempt from execution by virtue of N.C. Gen. Stat. § 1C-1601(a)(9) regardless of the purpose for which those funds are eventually used.[3]

3. In view of his failure to challenge the notification provision using any legal theory other than the one discussed in the text, Defendant has foregone the opportunity to contest the validity of the notification provision on any other basis. *See Citifinancial Mortgage Co. v. Gray*, 187 N.C. App. 82, 93, 652 S.E.2d 321, 327 (2007) (stating that, "[a]s defendant has not cited any authority in support of this argument, it is deemed abandoned and we do not address it").

The essential issue before the Court is one of statutory construction. "The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citing *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998)). "The best indicia of that intent are the language of the statute . . ., the spirit of the act and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co. v. Bd. of Commr's*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980). As a result, in construing N.C. Gen. Stat. § 1C-1601(a)(9), we should focus our efforts on attempting to ascertain the protections that the General Assembly intended to provide by exempting individual retirement accounts from execution.

In holding that the trial court erred by including the notification provision in its order, the Court essentially accepts Plaintiff's reasoning. The Court begins its analysis by reasoning that, given the logic of *Rousey v. Jacoway*, 544 U.S. 320, 327-28, 161 L. Ed. 2d 563, 571-72 (2005), Defendant's "IRAs are not analogous to checking accounts or other non-restricted accounts." In addition, the Court concludes that, given the absence of any indication that "any other provisions of federal law may be consulted in determining whether Defendant's IRAs, or the funds contained within, are exempt from Plaintiff's judgment," "North Carolina law governs the resolution of this issue." I agree with both of these conclusions. After noting during a discussion of authority from other jurisdictions that, "even where a statute makes specific reference to payments made from IRAs, appellate courts have tended to refer to IRAs in general, and not specifically to withdrawal of funds from IRAs, even when the withdrawal of funds was in issue," and that N.C. Gen. Stat. § 1C-1601(a)(9) "does not contain any language evincing an intent on the part of the General Assembly to treat withdrawals from IRAs differently than funds held within IRAs," the Court concludes that "[t]he most straightforward and logical reading of N.C. Gen. Stat. § 1C-1601(a)(9) is that not only are the IRAs exempt, but Defendant's legal use of the IRAs in the same manner as if there were no judgment against Defendant, is also exempt." Based on this logic, the Court decides that the trial court erred by including the notification provision in its order. I do not find this logic sufficient to justify vacating the notification provision for a number of reasons.

First, the Court's decision does not effectuate the policies that underlie the exemption created by N.C. Gen. Stat. § 1C-1601(a)(9). The "General Assembly's purpose in enacting N.C. Gen. Stat. § 1C-1601(a)(9) was *to protect a debtor's right to receive retirement benefits*[.]" *In re Grubbs*, 325 B.R. 151, 154-55 (Bankr. M.D.N.C. 2005)

(emphasis added). This understanding of the legislative intent underlying N.C. Gen. Stat. § 1C-1601(a)(9) is fully consistent with the fundamental purpose of individual retirement accounts themselves, which is "to provide retirement benefits to individuals." *In re Brucher*, 243 F.3d 242, 243 (6th Cir. 2001). As a result, I believe that the General Assembly's intent in enacting N.C. Gen. Stat. § 1C-1601(a)(9) was to protect the ability of individual retirement account owners to provide themselves with retirement benefits. Since the Court concludes that all funds that have been paid out from Defendant's individual retirement account are protected from execution by N.C. Gen. Stat. § 1C-1601(a)(9) regardless of the extent to which those funds are used to "provide retirement benefits," the construction of N.C. Gen. Stat. § 1C-1601(a)(9) adopted by the Court is not consistent with the legislative intent that motivated the enactment of the relevant statutory provision, a fact that casts doubt on the validity of the construction adopted by the Court.

Secondly, the effect of the Court's decision is to insulate any money that ever enters Defendant's individual retirement accounts from the claims of his creditors, no matter what use Defendant may make of those funds. For example, assume for purposes of discussion that Defendant withdraws a substantial sum from one or both of his individual retirement accounts in order to purchase a luxury motor vehicle, a yacht, or a vacation home. Under the Court's construction of N.C. Gen. Stat. § 1C-1601(a)(9), the mere fact that the money utilized to purchase these assets passed through Defendant's individual retirement accounts suffices to preclude Plaintiff from executing on these items of property even though they have little or nothing to do with ensuring that Defendant's retirement needs are met. As has already been noted, " 'where a literal interpretation of the language of a statute will . . . contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.' " *Frye Reg'l Med. Ctr., Inc. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999) (quoting *Mazda Motors*, 296 N.C. at 361, 250 S.E.2d at 253 (internal quotation omitted)). An interpretation of N.C. Gen. Stat. § 1C-1601(a)(9) that allows Defendant to use monies that were once contained in his individual retirement accounts in this manner without any risk that the resulting purchases will be subject to execution seems to me to run afoul of this fundamental canon of statutory construction. The fact that Defendant has not and may not make such an inappropriate use of the monies contained in his individual retirement accounts should not obscure the fact that, under the interpreta-

**KINLAW v. HARRIS**

[201 N.C. App. 252 (2009)]

tion of N.C. Gen. Stat. § 1C-1601(a)(9) adopted by the Court, he has the ability to do so with impunity. As a result, I believe that we should eschew the construction of N.C. Gen. Stat. § 1C-1601(a)(9) adopted by the Court for this reason as well.[4]

Thirdly, I am unable to agree with the full extent of the Court's reasoning, based upon decisions such as *In re Krebs*, 527 F.3d 82 (3rd Cir. 2008), and *In re Brucher*, 243 F.3d 242 (6th Cir. 2001), to the effect that providing protection for the corpus of an individual retirement account necessarily involves protecting disbursements from the account as well. Although I do not dispute that these decisions, and others upon which the Court also relies, hold that disbursements from individual retirement accounts, in addition to corpus of the account, are protected under various statutory exemption and exception provisions,[5] I am not certain that acceptance of this proposition should end our inquiry. Like my colleagues, I agree that a certain measure of protection should be provided to disbursements made from individual retirement accounts. In addition, I join my colleagues in believing that the exemption from execution created by N.C. Gen. Stat. § 1C-1601(a)(9) would mean little in the event that Defendant could not access the funds in his individual retirement account in order to provide retirement benefits to himself and for other appropriate purposes.[6] However, the Court appears to believe that the

---

4. After acknowledging my "concern that the protections afforded by N.C. Gen. Stat. § 1C-1601(a)(9) could allow an [individual retirement account] holder to withdraw IRA monies for purposes unrelated to retirement or other penalty-free exceptions," the Court notes that "it is the province of the General Assembly and not this Court, to craft legislation." I fully agree that the ultimate policy decisions concerning the extent to which disbursements from individual retirement accounts should be subject to the claims of creditors is a matter which is subject to control by the General Assembly; however, for the reasons stated in the text, I do not believe that the General Assembly intended to permanently immunize all funds that ever pass through individual retirement accounts from the claims of creditors regardless of the use that the account holder makes of those funds. For that reason, I believe that the interpretation of N.C. Gen. Stat. § 1C-1601(a)(9) that I have advanced is more consistent with the intent of the General Assembly than that adopted by the Court, which simply assumes, instead of demonstrating, that the General Assembly intended to countenance the results that I have described in the text.

5. As an aside, I note that certain of the statutory provisions at issue in the cases upon which the Court relies, such as 11 U.S.C. § 522(d)(10)(E), provide explicit protection to payments made from individual retirement accounts.

6. To be clear, by "other appropriate purposes," I mean purposes which are exempt from the claims of creditors under North Carolina law, are exempt from withdrawal penalties pursuant to the provisions of federal law governing individual retirement accounts, are used to provide support during retirement, or are otherwise protected under federal law.

**KINLAW v. HARRIS**

[201 N.C. App. 252 (2009)]

General Assembly intended to protect any and all disbursements from individual retirement accounts from execution, regardless of the purpose for which those disbursements are made, by enacting N.C. Gen. Stat. § 1C-1601(a)(9), while I do not believe that the General Assembly intended to provide such payments with this sort of ironclad protection. The Court's conclusion to this effect appears to rest upon the unstated premise that either all disbursements from an individual retirement account are exempt from execution under N.C. Gen. Stat. § 1C-1601(a)(9) or that none of them are, which leads to the unstated conclusion that since some such disbursements should be exempt, all of them must be. I am unwilling to go that far, because I believe, for the reasons stated in more detail above, that such a construction of N.C. Gen. Stat. § 1C-1601(a)(9) is inconsistent with the fundamental purpose "of provid[ing] retirement benefits for individuals" and leads to results that are unlikely to be reflective of the General Assembly's intent. Instead, I believe that the applicable canons of construction support a more nuanced interpretation of N.C. Gen. Stat. § 1C-1601(a)(9), under which some disbursements from an individual retirement account remain subject to the protections of N.C. Gen. Stat. § 1C-1601(a)(9) and some do not.[7] Since the

---

7. The Court appears to think that, under the interpretation of N.C. Gen. Stat. § 1C-1601(a)(9) that I believe to be appropriate, "*no* funds are fully protected from execution once they are withdrawn from an" individual retirement account, including "funds withdrawn after the age of 59 ½, penalty-free and for the purposes of support in retirement, because the language of N.C. Gen. Stat. § 1C-1601(a)(9) contains no exception for funds withdrawn after the IRA account holder reaches the age of 59 ½." The Court misapprehends my position in two respects. First, as I explained in more detail in Footnote No. 1, I have not cited *Sara Lee*, 351 N.C. 27, 519 S.E.2d 308, in discussing the lawfulness of the notification provision and have not taken the position that the lack of reference to disbursements in the literal language of N.C. Gen. Stat. § 1C-1601(a)(9) means that the relevant statutory language provides no protection for payments from individual retirement accounts. Secondly, contrary to the Court's assertion, I have not taken the position that no disbursement from an individual retirement account is entitled to absolute protection from the claims of creditors. Instead, as is discussed in some detail in the text, I believe that certain disbursements from an individual retirement account, such as funds withdrawn after the age of 59 ½ for purposes of support during retirement, are protected from the claims of the account holders' creditors by N.C. Gen. Stat. § 1C-1601(a)(9). To be absolutely clear, where I differ from the Court is that I do not believe that **all** disbursements from an individual retirement account, regardless of the purpose for which the resulting payments are used, are permanently immunized from the claims of the account holder's creditors by N.C. Gen. Stat. § 1C-1601(a)(9). I believe that this construction of N.C. Gen. Stat. § 1C-1601(a)(9), and not that espoused by the Court, is consistent with the General Assembly's intent, since it is focused upon the reasons that led the General Assembly to exempt individual retirement accounts from execution and since I do not, for the reasons stated above, believe that the General Assembly intended to permit individual retirement account owners to purchase luxury vehicles, yachts, or vacation homes using monies derived from their individual retirement accounts while the valid claims of creditors remain unsatisfied.

construction of N.C. Gen. Stat. § 1C-1601(a)(9) adopted by the Court does not incorporate such a nuanced approach and since I do not believe that the decisions upon which the Court relies are inconsistent with the construction of N.C. Gen. Stat. § 1C-1601(a)(9) that I believe to be appropriate or compel the result reached by the Court, I am not persuaded that these decisions from other jurisdictions adequately support the result reached by the Court.[8]

Finally, I do not believe that an interpretation of N.C. Gen. Stat. § 1C-1601(a)(9) that exempts some, but not all, disbursements from an individual retirement account from execution runs afoul of the general principle that statutory exemptions should be "liberally construed." After all, the literal language of N.C. Gen. Stat. § 1C-1601(a)(9) only mentions the corpus of an individual retirement account, so that extending the protection of the statutory exemption to disbursements involves a liberal construction of the exemption in and of itself. Furthermore, the rule favoring "liberal constructions" does not, it seems to me, override the other factors that must be considered in construing statutory provisions, such as attempting to effectuate the legislative intent and avoid results that manifestly run counter to the likely intent of the General Assembly. Any construction of N.C. Gen. Stat. § 1C-1601(a)(9) more "liberal" than the one set forth in this dissent strikes me as inconsistent with the intent of the General Assembly. As a result, I believe that the approach I have described is fully consistent with the general rule favoring the "liberal construction" of statutory exemptions.

At bottom, it seems to me that the approach adopted by the trial court reflects a proper understanding of the scope of the exemption set out in N.C. Gen. Stat. § 1C-1601(a)(9). In essence, the trial court concluded that some disbursements from Defendant's individual retirement accounts should be protected from execution and that others should not. To the extent that Defendant seeks to use monies from his individual retirement accounts for support during retirement, other purposes for which penalty-free withdrawals can be made under the provisions of federal law governing individual retire-

8. Although the Court cites *Brucher*, 243 F.3d 242, as rejecting the proposition that "the defendant's IRA could be exempt from creditors 'if and only if payment thereunder is made solely . . . on account of illness, disability, death, age or length of service," I do not believe that it conflicts with the result that I believe to be appropriate here since (1) the Sixth Circuit's actual holding was that the corpus of the debtor's individual retirement account was not subject to inclusion in his bankruptcy estate, and since (2) nothing in the Sixth Circuit's opinion suggests that any property that the debtor purchased using money derived from his individual retirement account was permanently protected from the claims of his creditors (internal quotations omitted).

**KINLAW v. HARRIS**

[201 N.C. App. 252 (2009)]

ment accounts, or purposes which would be exempt from execution under other provisions of state or federal law, those monies should remain protected from execution, and the interpretation of N.C. Gen. Stat. § 1C-1601(a)(9) that I believe to be appropriate would do just that. To the extent that Defendant seeks to use monies from his individual retirement accounts in ways which are not consistent with the purposes sought to be accomplished by N.C. Gen. Stat. § 1C-1601(a)(9), such monies should not be protected from the claims of creditors. Since the only way to ascertain which disbursements are entitled to protection under N.C. Gen. Stat. § 1C-1601(a)(9) and which are not is to examine each disbursement on a case-by-case basis, the trial court set up a mechanism under which such an analysis could be conducted in an expedited manner. Given that Defendant has challenged the notification provision exclusively on the grounds that no monies that had ever passed through his individual retirement accounts could be subject to the claims of his creditors, I do not believe that we need to evaluate the extent to which the trial court had the authority to require the use of the particular approach mandated by its order. Thus, given that the trial court's order rests upon a proper understanding of the scope of the exemption set out in N.C. Gen. Stat. § 1C-1601(a)(9) and given that Defendant has not challenged the actual mechanism developed by the trial court for the purpose of evaluating withdrawals by Defendant from his individual retirement accounts, I do not see any basis for concluding that the notification provision suffers from any legal defect based upon the arguments advanced in Defendant's brief.

As a result, for the reasons stated above, I believe that the trial court correctly granted Defendant's motion to vacate the writ of execution that Plaintiff had procured. In addition, I do not believe that the only argument that Defendant has advanced in opposition to the notification provision in the trial court's order has any merit. Thus, I would affirm the trial court's order in its entirety. For that reason, I concur in that portion of the Court's opinion that affirms the trial court's decision to vacate the writ of execution and declares the notice of levy to be null and void, and dissent from that portion of the Court's opinion that vacates the notification provision in the trial court's order.