MICHAEL KINLAW v. JOHN J. HARRIS, JR., M.D.

No. 20A10

(Filed 5 November 2010)

**Enforcement of Judgments— IRA exemption—requirement to place withdrawn IRA funds in escrow**

Although the Court of Appeals did not err by concluding that N.C.G.S. § 1C-1601(a)(9) exempts defendant's IRAs from plaintiff's judgment against defendant, it erred by vacating the trial court's order requiring defendant to place in escrow any funds he may withdraw from his IRAs. The trial court did not abuse its discretion in fashioning an equitable mechanism to determine the exempt status of defendant's future withdrawals from his IRAs when both parties consented to the escrow arrangement ordered and it was only on appeal that defendant disputed the mechanism to which he agreed before the trial court. The trial court had a reasonable basis to believe that a mechanism for monitoring the exempt status of those funds was necessary to protect the plaintiff's judgment claim.

Justice EDMUNDS concurring in part and dissenting in part.

Chief Justice PARKER and Justice TIMMONS-GOODSON joining in this concurring and dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 689 S.E.2d

428 (2009), affirming in part and vacating in part an order entered on 21 July 2008 by Judge Gary L. Locklear in Superior Court, Robeson County. On 28 January 2010, the Supreme Court allowed plaintiff's petition for discretionary review of an additional issue. Heard in the Supreme Court 8 September 2010.

*Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by Steven C. Lawrence, for plaintiff-appellant.*

*McCoy Wiggins Cleveland & O'Connor PLLC, by Jim Wade Goodman, for defendant-appellee.*

NEWBY, Justice.

This case presents the question whether the trial court erred by declaring defendant's individual retirement accounts ("IRAs") exempt from execution and by ordering that any future withdrawals from defendant's Fidelity IRAs comply with an escrow arrangement. We conclude that the trial court properly applied N.C.G.S. § 1C-1601(a)(9) and acted within its broad equitable power. Therefore, we affirm the holding of the Court of Appeals that N.C.G.S. § 1C-1601(a)(9) exempts defendant's IRAs from plaintiff's judgment against defendant. We reverse, however, the decision of the Court of Appeals vacating the trial court's order requiring defendant to place in escrow any funds he may withdraw from his IRAs, as discussed below.

On 3 May 2004, the trial court entered a judgment in this case awarding plaintiff $567,000.00 in compensatory and punitive damages. In response to a notice of rights to claim exempt property, on 9 June 2004, defendant moved to claim certain property as exempt from plaintiff's judgment. By order entered 16 July 2004, the trial court declared defendant's two Fidelity IRAs and other items exempt from the judgment. Later, plaintiff again attempted postjudgment collection, obtaining a writ of execution against certain property that included defendant's two IRAs. On 21 November 2007, defendant moved to vacate the writ of execution and confirm that his IRAs are exempt from execution.

At a hearing on 25 June 2008, the parties presented evidence that defendant's two Fidelity IRAs are held solely in his name as part of an equitable distribution agreement with his former spouse. Pursuant to this arrangement, defendant's former wife retained most of the nonexempt property, while defendant kept the couple's exempt property and a Beachcraft Bonanza airplane (which was subse-

quently sold and the proceeds applied toward payment of a Medicare fraud claim).

In addition to plaintiff's judgment against him, defendant owes the federal government approximately $320,000.00 for Medicare fraud. Defendant testified that in 2004 he withdrew $50,000.00 from one IRA and paid the entire amount to the federal government in partial settlement of the Medicare fraud claim. Defendant also testified that in 2005 he withdrew $55,555.55 from his other IRA, applied $5,555.55 to tax penalties, and paid the balance for "hospital costs and costs to the government." Throughout the hearing, defendant could not estimate the allocation of this withdrawal between the Medicare settlement and the personal hospital expenses. In his 19 May 2008 affidavit, defendant stated that the 2004 and 2005 withdrawals were used "to pay off extraordinary business and personal medical expenses" but that he has no further intentions of taking any other distributions from either of his IRAs "until [he] reach[es] the age when [he] can do so without incurral of penalty."

Plaintiff maintains that defendant knowingly attempted to make himself judgment proof through his equitable distribution arrangement. Plaintiff further argues that by making the two withdrawals, defendant changed the nature of the IRAs such that they are no longer exempt accounts. Defendant contends that despite these actions, the IRAs retain their exempt status.

While the parties disagree about the protected status of the IRAs, both agreed to a mechanism to allow prior review of any future withdrawals from defendant's IRAs. At the 25 June 2008 hearing, defendant's attorney stated that defendant would be willing to give plaintiff notice of any intended withdrawals from the IRAs on the condition that the trial court declare the IRAs exempt and rule that any purported levy by the sheriff is invalid. After discussion with plaintiff's attorney, defendant's attorney summarized the agreed-upon escrow requirement for the trial court:

> If [defendant] makes a withdrawal . . . from his IRA, the money immediately has to go into my trust account and it has to stay there. We must give [plaintiff's attorney] notice as soon as possible of the withdrawal. He will then have five business days to decide whether to contest the withdrawal or seek some declaration as to the status of that withdrawn money. And then we would both agree to have that matter resolved by the Court as expeditiously as possible.

## KINLAW v. HARRIS

[364 N.C. 528 (2010)]

At the conclusion of the hearing, the trial court orally declared the IRAs exempt, vacated plaintiff's writ of execution and accompanying levy, and endorsed the implementation of the escrow arrangement proposed by the parties. On 21 July 2008, the trial court entered a written order consistent with its oral declaration.

Both plaintiff and defendant appealed from the trial court's order. The Court of Appeals unanimously affirmed the portion of the trial court's order vacating plaintiff's writ of execution and held that under N.C.G.S. § 1C-1601(a)(9), defendant's IRAs are exempt from plaintiff's judgment. *Kinlaw v. Harris*, —— N.C. App. ——, ——, 689 S.E.2d 428, 433 (2009). Additionally, the majority vacated the portion of the trial court's order requiring defendant to place any funds withdrawn from the IRAs in an escrow or other trust account for a determination of the funds' exempt status. *Id.* at ——, 689 S.E.2d at 433.

The dissenting judge disagreed with the majority's conclusion that withdrawals from IRAs are automatically exempt. *Id.* at ——, 689 S.E.2d at 435-39 (Ervin, J., concurring in part and dissenting in part). Although he agreed with the majority's observation that "IRAs are not analogous to checking accounts or other non-restricted accounts" from which an individual may draw freely, *id.* at ——, 689 S.E.2d at 431 (majority) (citing, *inter alia, Rousey v. Jacoway*, 544 U.S. 320, 327-28, 125 S. Ct. 1561, 1566-67, 161 L. Ed. 2d 563, 571-72 (2005)), the dissenting judge opined that the majority's holding would place no limits on expenditures from IRA accounts, *id.* at ——, 689 S.E.2d at 436 (Ervin, J.). Thus, according to the dissent, a debtor would be allowed to insulate funds within an exempt IRA and then use any withdrawn monies as the debtor desires, without threat of execution by creditors. *Id.* at ——, 689 S.E.2d at 436 (stating that funds withdrawn from an IRA could even be used to freely purchase luxury items such as cars, yachts, or vacation homes).

Rather, the General Assembly's " 'purpose in enacting N.C. Gen. Stat. § 1C-1601(a)(9) was *to protect a debtor's right to receive retirement benefits[.]' " Id.* at ——, 689 S.E.2d at 436 (quoting *In re Grubbs*, 325 B.R. 151, 154-55 (Bankr. M.D.N.C. 2005) (alteration in original) (emphasis added)). Accordingly, the dissent stated, "To the extent that Defendant seeks to use monies from his individual retirement accounts in ways which are not consistent with the purposes sought to be accomplished by N.C. Gen. Stat. § 1C-1601(a)(9), such monies should not be protected from the claim of creditors." *Id.* at ——, 689 S.E.2d at 439. The dissenting judge concluded that as case-by-case analysis is the only way to determine which withdrawals are entitled

KINLAW v. HARRIS

[364 N.C. 528 (2010)]

to the protection of N.C.G.S. § 1C-1601(a)(9), the trial court did not err in ordering an escrow arrangement. *Id.* at ——, 689 S.E.2d at 439.

Plaintiff appealed to this Court as of right based on the dissenting opinion's conclusion that the trial court properly ordered the creation of an escrow arrangement that would enable the assessment of future withdrawals. We allowed discretionary review of whether defendant's IRAs are exempt from plaintiff's judgment claim.

Under N.C.G.S. § 1C-1601(a)(9), a debtor's individual retirement plans and any other plans treated as such, are exempt from execution by creditors. N.C.G.S. § 1C-1601(a)(9) (2009).[1] Plaintiff maintains that defendant's withdrawal of funds in 2004 and 2005 amounts to treating the IRAs in a manner inconsistent with the purpose of IRAs and the protections given under N.C.G.S. § 1C-1601(a)(9). As such, plaintiff contends that defendant's behavior invalidates the IRAs' exempt status. While we do not conclude that such a claim would never be successful, on the facts of this case the trial court properly determined that the corpus of each of defendant's IRAs continues to maintain its exempt status.

Turning to the escrow arrangement, this case does not require us to determine whether funds removed in a particular withdrawal lose their exempt status. Rather, we must decide whether under any circumstances funds withdrawn from an IRA could lose their exempt status. Given the text of N.C.G.S. § 1C-1601(a)(9), which focuses its protection on "retirement plans," and the reasoning employed by the dissenting judge at the Court of Appeals, we believe there may be some circumstances under which withdrawn funds are no longer exempt from execution. Because such a scenario is possible, we must now consider whether the trial court acted within its equitable power when it established an escrow arrangement to preserve the funds while it determines the exempt status of any withdrawal from defendant's IRAs.

Trial courts have broad discretion to fashion equitable remedies to protect innocent parties when injustice would otherwise result. *See Lankford v. Wright,* 347 N.C. 115, 120, 489 S.E.2d 604, 607 (1997) ("[I]t is the unique role of the courts to fashion equitable remedies to protect and promote the principles of equity . . . ."). This discretion includes the power to " 'grant, deny, limit, or shape' " relief as neces-

---

1. The Court of Appeals decision cites to N.C.G.S. § 1C-1601(a)(9) (2005). We cite to the current version of the statute, N.C.G.S. § 1C-1601(a)(9) (2009), though there is no substantive difference in the two versions.

sary to achieve equitable results. *Sara Lee Corp. v. Carter*, 351 N.C. 27, 36, 519 S.E.2d 308, 314 (1999) (citation omitted) (holding that the trial court properly exercised its discretion in ordering that the defendant's workers' compensation benefits be placed in a constructive trust for the benefit of the plaintiff). In fashioning an equitable remedy, the conduct of both parties must be weighed by the trial court. *Creech v. Melnik*, 347 N.C. 520, 529, 495 S.E.2d 907, 913 (1998) (citations omitted).

Because the fashioning of equitable remedies is a discretionary matter for the trial court, we review such actions under an abuse of discretion standard. *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (stating that appellate review of matters left to the discretion of the trial court "is limited to a determination of whether there was a clear abuse of discretion") (citations omitted). When undertaking this review, we afford the trial court great deference and will upset its decision only upon a showing that its actions were "manifestly unsupported by reason." *Id.* (citing *Clark v. Clark*, 301 N.C. 123, 271 S.E.2d 58 (1980)). We may not substitute our own judgment for that of the trial court. *See Worthington v. Bynum*, 305 N.C. 478, 486-87, 290 S.E.2d 599, 604-05 (1982).

We hold that the trial court did not abuse its discretion in fashioning an equitable mechanism to determine the exempt status of defendant's future withdrawals from his IRAs. We note that the record shows that both parties consented to the escrow arrangement ordered. It is only on appeal that defendant disputes the mechanism to which he agreed before the trial court. As such, the trial court had a reasonable basis to believe that a mechanism for monitoring the exempt status of those funds is necessary to protect the plaintiff's judgment claim. The trial court was not only acting pursuant to its broad discretionary authority to administer an equitable remedy, but also at the request of both parties affected. When parties consented to a particular remedy, the court generally will enforce that remedy. *See generally, State v. Philip Morris USA Inc.*, 363 N.C. 623, 643, 685 S.E.2d 85, 97-98 (2009) (declining to modify a trust and enforcing the remedy to which the parties agreed); *White v. White*, 289 N.C. 592, 596, 223 S.E.2d 377, 380 (1976) (holding that "a court may enforce . . . its order, entered by consent, that child support payments may be made beyond the time for which there is a duty to provide support"). This is particularly true where parties have asserted one position before the court and subsequently attempt to advocate for an inconsistent position that unfairly disadvantages the opposing

KINLAW v. HARRIS

[364 N.C. 528 (2010)]

party. *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 28-29, 591 S.E.2d 870, 888-89 (2004) (stating that judicial estoppel may apply where parties assert a position inconsistent with a previous position and an unfair advantage may result).

In conclusion, we hold the trial court acted correctly in declaring the corpus of each IRA to be exempt from execution and in fashioning an equitable mechanism to determine the exempt status of future withdrawals from defendant's IRAs. Accordingly, we affirm the Court of Appeals' decision to exempt from plaintiff's judgment the corpus of each of defendant's Fidelity IRAs. We reverse the decision of the Court of Appeals vacating the trial court's order requiring defendant to place in escrow any funds he may withdraw from his IRAs. We remand this case to the Court of Appeals for further remand to the Superior Court, Robeson County, for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Justice EDMUNDS concurring in part and dissenting in part.

While I agree with the majority that the Court of Appeals correctly affirmed the portion of the trial court's order vacating plaintiff's Writ of Execution and finding the corpus of defendant's IRA accounts exempt under N.C.G.S. § 1C-1601(a)(9), I believe that all withdrawals from an IRA are similarly exempt. Accordingly, the parties and the trial court lacked legal authority to set up and enforce their escrow agreement.

The issue before us is not whether the escrow agreement is a good idea or whether the parties were acting in good faith. The issue is whether the agreement between the parties and endorsed by the trial court is legal. Because I believe all withdrawals are exempt under N.C.G.S. § 1C-1601(a)(9), the trial court had no power, equitable or otherwise, to participate in an agreement that treats some withdrawals as exempt but others as subject to the claims of creditors.

IRA accounts are unquestionably exempt. The pertinent statute provides that:

Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors:

. . . .

(9) Individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code, including individual retirement accounts and Roth retirement accounts as described in section 408(a) and section 408A of the Internal Revenue Code, individual retirement annuities as described in section 408(b) of the Internal Revenue Code, and accounts established as part of a trust described in section 408(c) of the Internal Revenue Code.

N.C.G.S. § 1C-1601(a)(9) (2009). While this portion of the statute is silent as to the status of early withdrawals from an IRA, in another subdivision of the statute the General Assembly demonstrated its ability to differentiate assets when it provided that exempted funds include: "Alimony, support, separate maintenance, and child support payments or funds that have been received or to which the debtor is entitled, *to the extent the payments or funds are reasonably necessary for the support of the debtor or any dependent of the debtor.*" *Id.* § 1C-1601(a)(12) (2009) (emphasis added). Thus, in the context of alimony funds received by a debtor, the General Assembly permitted some receipts covered by subdivision (a)(12) to be exempt, but not others. Under the doctrine of statutory interpretation that *expressio unius est exclusio alterius*, because the General Assembly differentiated the treatment of (a)(12) funds but not (a)(9) funds, it follows that all withdrawals from an IRA are exempt from creditors without qualification. *See In re Investigation of the Death of Miller*, 357 N.C. 316, 325, 327, 584 S.E.2d 772, 780, 781-82 (2003) (applying the doctrine); *Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 303, 354 S.E.2d 495, 498-99 (1987) (same).

This interpretation is consistent with the intent of the statute. "[T]he North Carolina General Assembly's purpose in enacting N.C.[G.S.] § 1C-1601(a)(9) was to protect a debtor's right to receive retirement benefits . . . ." *In re Grubbs*, 325 B.R. 151, 154-55 (Bankr. M.D.N.C. 2005). Statutory exemptions should be given a liberal construction in favor of the debtor. *See Elmwood v. Elmwood*, 295 N.C. 168, 185, 244 S.E.2d 668, 678 (1978) ("The humane and beneficent provisions of the law in regard to exemptions, being remedial in their nature and founded upon a sound public policy, should always receive a liberal construction so as to embrace all persons coming fairly within their scope." (citations and quotation marks omitted)). This interpretation is also sound public policy. Escrow agreements of

the type employed in this case would not only subject debtors to litigation over every withdrawal from an IRA account, they would also entangle trial courts in the day-to-day supervision of those withdrawals. The substantial penalties for early withdrawals provide sufficient disincentive to discourage debtors from using an IRA as a ready source of exempt funds.

Defendant's appeal is not foreclosed by judicial estoppel. That doctrine, discussed in detail in *Whitacre Partnership v. Biosignia, Inc.*, 358 N.C. 1, 591 S.E.2d 870 (2004), is a "discretionary equitable doctrine" that effectively precludes a party from asserting inconsistent positions before a tribunal. *Id.* at 27-30, 591 S.E.2d at 887-89. Although the record does not indicate who initiated the proposed escrow agreement, both parties agreed to it on the record before the trial court. Nevertheless, plaintiff filed notice of appeal on 20 August 2008, while defendant did not respond with its notice of appeal until 29 August 2008. A discretionary doctrine of equity should not be invoked to deprive defendant of the right to defend his position after his opponent, who also agreed to the escrow arrangement, appealed.

The majority's holding both thwarts the General Assembly's intent to exempt retirement funds and puts trial courts in the untenable position of determining which withdrawals from a debtor's IRA represent legitimate retirement expenses. Accordingly, I respectfully dissent from that portion of the majority opinion reversing the opinion of the Court of Appeals.

Chief Justice PARKER and Justice TIMMONS-GOODSON join in this concurring and dissenting opinion.